The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

ROBERT KENNY,

                    Plaintiff,

    v.

PACIFIC INVESTMENT MANAGEMENT
COMPANY LLC, a Delaware limited liability
company; PIMCO INVESTMENTS LLC,

                    Defendants.

No. 2:14-cv-01987-RSM

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS

NOTED ON MOTION CALENDAR:
MAY 20, 2015

ORAL ARGUMENT REQUESTED

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ................................................................. 1

II. OVERVIEW ........................................................................................ 2

    A.  The Investment Company Act .................................................... 2

    B.  The Standard of Liability Under § 36(b) ................................... 4

    C.  The Fees At Issue ...................................................................... 4

III. ARGUMENT ..................................................................................... 6

    A.  The Legal Standards Applicable to a Motion to Dismiss .......... 6

    B.  Evaluating Section 36(b) Claims on a Motion to Dismiss ......... 8

    C.  Plaintiff Has Pled Facts Sufficient Under Section 36(b) of the ICA ................... 9

        1.  Economies of Scale ......................................................... 9

            a.  Plaintiff's Allegations Are Far From Conclusory ...................... 10

                (i)    Economies of Scale in Investment Advisory Services ................... 11

                (ii)   Economies of Scale in Supervisory and Administrative Services ........... 12

                (iii)  Economies of Scale in Distribution and Servicing ..................... 12

                (iv)   Plaintiff's Economies-of-Scale Allegations Are Sufficiently Detailed .............. 13

            b.  Plaintiff Need Not Allege Detailed Facts of Defendants' Cost Savings from Economies of Scale ................ 14

            c.  Defendants' Factual Arguments About Shared Economies of Scale are Premature ............................. 15

            d.  A Decline in Assets Under Management Does Not Alleviate Defendants' Fiduciary Duty ....................... 16

        2.  Comparative Fees ............................................................ 18

            a.  Relevancy Determinations Are Grossly Premature ................... 18

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - i

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

b. The Supreme Court Has Determined that Comparisons to Fees of Other Captive/Peer Funds Are Problematic ........................................ 19

c. Comparators Offered by Plaintiff Satisfy This Factor ............................................................ 20

(i) The Total Return Fund Separate Account Versus the "Total Return" Fund .................................... 20

(ii) The Total Return Fund versus The Harbor Bond Fund ...................................................... 21

(iii) The Total Return Fund versus the Total Return Active Exchange-Traded Fund ........................... 23

3. The Nature and Quality of Services ..................................... 24

4. Profitability ................................................................ 25

5. Fall-out Benefits ........................................................... 26

6. Independence and Conscientiousness of the Board ............................... 27

D. Defendants Ignore Relevant Cases and Rely on Inapposite Cases .................... 31

E. Plaintiff Has Standing To Assert Claims on Behalf of Shareholders in All Share Classes of the Fund .............................................. 34

F. Defendants Prematurely Challenge Plaintiff's Requests for Rescission and a Jury Trial ........................................................ 36

IV. CONCLUSION ................................................................ 36

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - ii

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Chemicals & Equip., Inc. 401(k) Ret. Plan v. Principal Mgmt. Corp.*,
    No. 4:14-00044, 2014 WL 5426908 (S.D. Iowa Sept. 10, 2014) .................................... *passim*

*In re American Mutual Funds Fee Litig.*,
    No. 04-5593, 2009 WL 5215755 (C.D. Cal. Dec, 28, 2009) ................................11, 31, 34, 35

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
    464 F.3d 338 (2d Cir. 2006)...........................................................................................30

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................6, 34

*Bayless-Ngethe v. Dep't of Vocational Rehab.*,
    No. 13-1574, 2014 WL 1165811 (W.D. Wash. Mar. 21, 2014) ..............................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................2, 6, 34

*Bell v. King Cnty.*,
    No. 07-1790-RSM, 2008 WL 2273187 (W.D. Wash. June 2, 2008).........................................7

*In re Blackrock Mut. Funds Advisory Fee Litig.*,
    No. 14-1165, 2015 WL 1418848 (D. N.J. Mar. 27, 2015) ........................................... *passim*

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ...................................................................................... *passim*

*Concha v. London*,
    62 F.3d 1493 (9th Cir. 1995) .......................................................................................15, 27

*Curran v. Principal Mgmt. Corp., LLC.*,
    No. 09-0433, 2010 WL 2889752 (S.D. Iowa June 8, 2010), *vacated in part on
    other grounds*, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011)........................................ *passim*

*Daily Income Fund, Inc. v. Fox*,
    464 U.S. 523 (1984)........................................................................................................3

*Doe I v. Nestle USA, Inc.*,
    766 F.3d 1013 (9th Cir. 2014) ...........................................................................................7

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) -  iii

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

*Dumond v. Mass. Fin. Servs. Co.*,
    No. 04-11458, 2006 WL 149038 (D. Mass. Jan. 19, 2006)................................................31, 32

*Erickson v. Pardus*,
    551 U.S. 89 (2007).........................................................................................................................6

*In re Federated Mut. Funds Excessive Fee Litig.*,
    No. 04-352, 2009 WL 5821045 (W.D. Pa. Sept. 30. 2009)..................................25, 30, 31, 32

*In re Franklin Mut. Funds Fee Litig.*,
    478 F. Supp. 2d 677 (D. N.J. 2007) ...........................................................................................25

*Gallus v. Am. Express Fin. Corp.*,
    370 F. Supp. 2d 862 (D. Minn. 2005) .........................................................................................32

*Gallus v. Ameriprise Fin., Inc.*,
    561 F.3d 816 (8th Cir. 2009), *vacated by*, 559 U.S. 1046 (2010) ........................18, 21, 31, 32

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,
    694 F.2d 923 (2d Cir. 1982)............................................................................................ *passim*

*Goodman v. J.P. Morgan Invest. Mgmt, Inc.*,
    No. 2:14-414, 2015 WL 965665 (S.D. Ohio Mar. 04, 2015).........................................9, 31, 36

*Hoffman v. UBS–AG*,
    591 F. Supp. 2d 522 (S.N.D.Y. 2008)..........................................................................22, 32, 33

*Hunt v. Invesco Funds Group, Inc.*,
    No. 04-2555, 2006 WL 1581846 (S.D. Tex. June 5, 2006)........................................23, 31, 32

*Ileto v. Glock Inc.*,
    349 F.3d 1191 (9th Cir. 2003) .....................................................................................................7

*Jones v. Harris Assocs. L.P.*,
    537 F.3d 728 (7th Cir. 2008) ......................................................................................................19

*Jones v. Harris Assocs., L.P.*,
    559 U.S. 335 (2010)......................................................................................................... *passim*

*Jones v. Harris Assocs. L.P.*,
    No. 04-8305, 2005 WL 831301 (N.D. Ill. Apr. 7, 2005)...........................................................31

*Krantz v. Fidelity Mgmt. & Research Co.*,
    98 F. Supp. 2d 150 (D. Mass. 2000) ..........................................................................................15

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) -  iv

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

*Krinsk v. Fund Asset Mgmt., Inc.*,
  875 F.2d 404 (2d Cir. 1989)...............................................................................10, 33

*Laborers' Local 265 Pension Fund v. iShares Trust*,
  769 F.3d 399 (6th Cir. 2014) ......................................................................................33

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*,
  507 U.S. 163 (1993).....................................................................................................15

*Living Holdings Ltd. v. Salomon Smith Barney, Inc.*,
  416 F.3d 940 (9th Cir. 2005) .......................................................................................27

*Merritt v. Countrywide Fin. Corp.*,
  583 F. App'x 662 (9th Cir. 2014) ..................................................................................7

*Migdal v. Rowe Price-Fleming Int'l., Inc.*,
  248 F.3d 321 (4th Cir. 2001) ...........................................................................3, 10, 32

*In re Mutual Funds Inv. Litig.*,
  519 F. Supp. 2d 580 (D. Md. 2007) ............................................................................35

*Pepper v. Litton*,
  308 U.S. 295 (1939).......................................................................................................4

*Reso v. Artisan Partners Ltd. P'ship*,
  No. 11–873, 2011 WL 5826034 (E.D. Wis. Nov. 18, 2011) .............................. *passim*

*In re Scudder Mutual Funds Fee Litig.*,
  No. 04-1921, 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007).......................................35

*Sins v. Janus Capital Mgmt., LLC*,
  No. 04-01647, 2006 WL 3746130 (D. Colo. Dec. 15, 2006) ...............................14, 23, 31, 32

*Sivolla v. AXA Equitable Life Ins. Co.*,
  No. 11-4194, 2012 WL 4464040 (D. N.J. Sept. 25, 2012) ...............................32, 34

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) .......................................................................................6

*Strigliabotti v. Franklin Res. Inc.*,
  No. 04-0883, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) .........................................32

*Yagman v. Galipo*,
  No. 12-7908, 2012 WL 5458072 (C.D. Cal. Nov. 5, 2012) ..........................................7

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - v

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

*Yampolsky v. Morgan Stanley Inv. Advisors Inc.*,
   2003 WL 25659495 (S.D.N.Y. July 31, 2003) ........................................................30

*Zander v. Tropicana Entm't, Inc.*,
   No. 2:13-00848, 2014 WL 794212 (D. Nev. Feb. 26, 2014)......................................8

*Zehrer v. Harbor Capital Advisors, Inc.*,
   No. 14 C 789, 2014 WL 6478054 (N.D. Ill. Nov. 18, 2014)......................... *passim*

**Statutes**

Investment Company Act of 1940, 15 U.S.C. § 80a-35(b)................................... *passim*

**Rules**

Fed. R. Civ. P. 8......................................................................................................6, 33

Fed. R. Civ. P. 12...........................................................................1, 15, 31, 36

**Other Authorities**

1970 U.S.C.C.A.N. 4897 ..............................................................................................3

S. Rep. No. 91-184 (1969) ............................................................................................3

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) -  vi

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

## I.   PRELIMINARY STATEMENT

In 2013 alone, the PIMCO Defendants[1] charged the shareholders of the PIMCO Total Return Fund $1.5 billion in fees, awarded Ex-head of PIMCO, Bill Gross, a $290 million bonus and his second-in-command a whopping $230 million, and ousted a Board member who dared challenge Gross's compensation—all this despite the Fund's dismal performance that trailed 70% of its peers. That same year, PIMCO charged the Fund's shareholders $647 million more in advisory fees than a similar mutual fund subadvised by Gross that Gross himself admitted was the same as the Total Return Fund except for its size and fees it paid. In the face of these and myriad additional facts, Defendants argue that Plaintiff should not be entitled to a review of the compensation they received from the Fund.

Rather than present any colorable basis for dismissal, Defendants' brief does little more than raise factual disputes that the Court cannot resolve on the pleadings. In contravention of Ninth Circuit and Supreme Court authority, Defendants demand that Plaintiff *prove* his claims rather than *plead* them. Defendants further entreat the Court to turn Rule 12(b)(6) on its head by resolving disputed facts in their favor and drawing inferences against Plaintiff. And Defendants do no service to the Court by ignoring Plaintiff's allegations and instead seeking dismissal based on Defendants' *contentions* as to the facts of this case.

Plaintiff Robert Kenny presents the Court with a compelling complaint detailing Defendants' breach of their fiduciary duties that the Investment Company Act of 1940 ("ICA"), 15 U.S.C. § 80a-35(b), imposes on them. Defendants have breached Section 36(b) of the ICA by receiving fees from the Fund that are so disproportionately large that they bear no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining. *See Jones v. Harris Assocs., L.P.*, 559 U.S. 335 (2010) (elucidating the ICA's breach of fiduciary duty standard). As fiduciaries to the Fund—the largest bond fund in the world—

---

[1] The Defendants are Pacific Investment Management Company LLC ("PIMCO") and PIMCO Investments LLC ("PIMCO Investments").

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 1

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

Defendants have improperly siphoned hundreds of millions of dollars from the Fund by overcharging for investment advisory, administrative, supervisory, and distribution related services they provide the Fund. Taken as a whole, the 172 paragraphs of factual allegations in Plaintiff's Complaint establish a plausible claim that Defendants violated the ICA.

Defendants' receipt of compensation is not reasonably related to the services they provide. This fact is laid bare when comparing the fees Defendants charge to comparable funds and in examining Defendants' failure to pass on the cost savings they realize from operating the world's largest bond fund. The Complaint also sets out a litany of facts to show that the fees charged are not the product of free and open negotiations. Rather, Defendants have assembled a Board of Trustees to oversee the fees that acts as little more than a rubber stamp. Indeed, Defendants tolerate no dissension—as they forced one of the Fund's independent trustees to resign for voicing complaints about the extravagant compensation PIMCO paid its executives.

If this Complaint does not place Defendants on notice of Plaintiff's claims, it is unimaginable what would. In fact, at least fourteen courts across the nation have denied motions to dismiss similar complaints brought under § 36(b), including at least nine of which were decided post-*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and seven of which were decided after *Jones*,[2] a case upon which Defendants rely heavily. *See infra* Part III.D. Defendants neglect to mention these recent cases, instead relying on decades-old and inapposite cases that dismissed complaints bearing little resemblance to Plaintiff's Complaint.

## II.      OVERVIEW

### A.      The Investment Company Act

The fiduciary duties that the ICA imposes on investment advisers and their affiliates, such as Defendants, exist to combat abuses that arise out of the close relationship that investment advisers enjoy with respect to the mutual funds they manage. This is because a mutual fund is

---

[2] Ropes & Gray was counsel in one of these post-*Jones* cases. See *Kasilag v. Hartford Inv. Fin. Servs., LLC*, No. 11–1083, ECF Nos. 12 and 78.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 2

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

"typically created and managed by a pre-existing external organization known as an investment adviser" that "generally supervises the daily operation of the fund and often selects affiliated persons to serve on the [fund's] board of directors." *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 536 (1984) (citation omitted). For this reason, the relationship between a fund and its adviser is "'fraught with potential conflicts of interest.'" *Jones*, 559 U.S. at 339 (quoting *Daily Income Fund*, 464 U.S. at 536). Mindful of these potential conflicts, Congress enacted the Investment Company Act of 1940 to regulate and curb the "'abuse inherent in the structure of [mutual funds],'" and to create standards of care applicable to investment advisers. *Id.*

Despite the passage of the ICA in 1940, investment advisers continued exploiting their mutual funds by charging them excessive fees. Recognizing that "the forces of arms-length bargaining [over compensation] do not work in the mutual fund industry in the same manner as they do in other sectors of the American economy," Congress amended the ICA. S. Rep. No. 91-184, at 4 (1969), *reprinted* in 1970 U.S.C.C.A.N. 4897, 4901.

As a result, in 1960 Congress enacted § 36(b) to the ICA to impose a specific fiduciary duty on investment advisers and their affiliates with regard to the receipt of compensation for their services. A primary reason for the enactment of § 36(b) was Congress's recognition that "as mutual funds grew larger, it became less expensive for investment advisers to provide the additional services." *Migdal v. Rowe Price-Fleming Int'l., Inc.*, 248 F.3d 321, 326-27 (4th Cir. 2001). Through § 36(b), Congress intended "to ensure that investment advisers passed on to fund investors the savings that they realized from these economies of scale." *Id*. at 327.

Congress also added § 36(b) because it recognized the need for a "mechanism by which the fairness of management contracts could be tested in court." S. Rep. No. 91-184, at 5 (1969), *reprinted* in 1970 U.S.C.C.A.N. 4897, 4901. Congress empowered private shareholders to protect the interests of their fellow investors by acting as an "independent check[] on excessive fees." *Jones*, 559 U.S. at 351 (internal quotation marks and citation omitted).

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 3

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

**B.     The Standard of Liability Under § 36(b)**

The Supreme Court has provided some clarity as to the contours of the fiduciary duty that Section 36(b) imposes. In *Jones*, the Supreme Court defined the fiduciary duty at issue in § 36(b) cases by borrowing the standard set forth from a 1939 case:

> "[Fiduciaries'] dealings with [a beneficiary] are subjected to rigorous scrutiny and where any of their contracts or engagements with the [beneficiary] is challenged the burden is on the [fiduciary] not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. . . ."

*Jones*, 559 U.S. at 347 (quoting *Pepper v. Litton*, 308 U.S. 295, 306-07 (1939)). "'*The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain*. If it does not, equity will set it aside.'" *Id.* (quoting *Pepper*, 308 U.S. at 306-07) (emphasis in original). As the Court explained, "We believe that this formulation [from *Pepper*] expresses the meaning of 'fiduciary duty' in § 36(b)." *Id.* (citation omitted). And as explained more fully below, a plaintiff will demonstrate a breach of Section 36(b) where the fee charged "is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Id.* at 351.

**C.     The Fees At Issue**

Plaintiff is an investor in the Total Return Fund, the "most ubiquitous fund in the 401(k) marketplace." Compl. ¶ 34. Until he abruptly resigned in September 2014, Bill Gross was the flamboyant founder and CEO of PIMCO and the Fund's portfolio manager. *Id.* ¶¶ 35, 37. Since its inception in 1987, the Fund swelled in size to become the largest bond fund in the world. *Id.* ¶ 35. At its peak in April 2013, the Fund had over ***$292 billion*** in assets under management. *Id.* The compensation Defendants received from the Fund is extraordinary. *Id.* ¶¶ 52, 59, 122-23. In 2013 alone, the Defendants received over $1.5 billion in fees from the Fund. *Id.* ¶ 122. That same year, Gross took home a $290 million bonus and his co-CEO took home $230 million. *Id.* ¶ 38. And yet the Fund performed terribly in 2013, losing 1.95% and trailing 70% of its peers—its worst performance since 1994. *Id.* ¶ 36.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

At issue in Plaintiff's Complaint are four distinct categories of fees that Defendants charge the eight share[3] classes of the Fund:  (1) "investment advisory fees;" (2) "supervisory and administrative fees;" (3) "distribution fees;" and (4) "servicing fees."  Compl. ¶¶ 46-64. The advisory fee purports to compensate PIMCO for making investment decisions and placing orders for the Fund and providing periodic reports to the Board. Compl. ¶ 50. The supervisory and administrative fees paid to PIMCO purport to cover a variety of hard costs including regulatory compliance and the coordination and management of transfer agents, custodians, legal counsel and independent public accountants. Compl. ¶ 51. In fiscal year 2013, PIMCO took home over **$1.2 billion** for these services. Defendant PIMCO Investments also charges a "distribution fee" and a "servicing fee." Compl. ¶ 57. The distribution and servicing fees purport to cover the cost of acquiring new Fund shareholders and maintaining the new shareholder accounts. *Id.* For the distribution and servicing activities, the Fund paid nearly $300 million in fiscal year 2013.

The eight share classes in the Fund are charged a variety of rates for the same services:

| Class | Collected by PIMCO | | Collected by PIMCO Investments | | |
| --- | --- | --- | --- | --- | --- |
| | Investment Advisory Fee | Supervisory and Administrative | Distribution Fee | Servicing Fee | Total Fees |
| Administrative | 0.25% | 0.21% | 0.25% | -- | 0.71% |
| Institutional | 0.25% | 0.21% | -- | -- | 0.46% |
| A | 0.25% | 0.35% | -- | 0.25% | 0.85% |
| B | 0.25% | 0.35% | 0.75% | 0.25% | 1.60% |
| C | 0.25% | 0.35% | 0.75% | 0.25% | 1.60% |
| D | 0.25% | 0.25% | 0.25% | -- | 0.75% |
| P | 0.25% | 0.31% | -- | -- | 0.56% |
| R | 0.25% | 0.35% | 0.25% | 0.25% | 1.10% |

Compl. ¶ 47. The fees that Defendants charge the Fund have not meaningfully decreased in the past ten years. *Id.* ¶ 49.

[3] All B shares were transitioned to A shares on March 25, 2015, leaving seven share classes of the Fund at present. February 25, 2015 Supplement to the PIMCO Funds' Prospectuses and Statement of Additional Information each dated July 31, 2014, attached as Ex. A to the Lin Decl.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (2:14-cv-01987-RSM) - 5

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

As the Fund's assets under management have skyrocketed, so too has the compensation received, even when the assets under management dipped. Compl. ¶ 77. The following chart from the same paragraph of the Complaint illustrates this point.



**Chart A**
**Total Return Fund**
**Assets Under Management vs. Fees Paid**

## III.    ARGUMENT

### A.    The Legal Standards Applicable to a Motion to Dismiss

Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. 544, 555 (2007)). In fact, Rule 8(a) only requires enough facts to raise a reasonable expectation that discovery will reveal evidence to support the allegations. *Twombly*, 550 U.S. at 545; *see also Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011). Accordingly, a complaint with "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" precludes dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). *Iqbal* and *Twombly* do not impose a "probability requirement." *Iqbal*, 556 U.S. 678. Rather, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 6

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

suggestive of a claim entitling the plaintiff to relief." *Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1025 (9th Cir. 2014) (citation omitted).

In evaluating the sufficiency of a complaint, courts apply five well accepted rules:

1.  "'All complaints must be read liberally; dismissal on the pleadings never is warranted unless the plaintiff's allegations are doomed to fail under any available legal theory.'"[4]

2.  A court must "accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff."[5]

3.  A court must "consider all inferences favoring the non-moving party that a trier of fact could reasonably draw from the evidence."[6]

4.  A complaint can state a claim to relief by including facts based on information and belief.[7]

5.  A complaint should be read "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."[8]

Defendants attempt to upend these rules by mischaracterizing Plaintiff's Complaint,[9] faulting Plaintiff for not including more specific facts that are not publicly available, and asking the Court to evaluate the Complaint in a piecemeal fashion. Defendants repeatedly and improperly attempt to shift the favorable inference Plaintiff is entitled to by raising factual disputes throughout their motion and attaching hundreds of pages of documents allegedly

---

[4] *Am. Chemicals & Equip., Inc. 401(k) Ret. Plan v. Principal Mgmt. Corp.* ("*Am. Chemicals*"), No. 4:14-00044, 2014 WL 5426908, at *4 (S.D. Iowa Sept. 10, 2014) (citation omitted); *see also Bell v. King Cnty.*, No. 07-1790-RSM, 2008 WL 2273187, at *1 (W.D. Wash. June 2, 2008).

[5] *Bayless-Ngethe v. Dep't of Vocational Rehab.*, No. 13-1574, 2014 WL 1165811, at *1 (W.D. Wash. Mar. 21, 2014) (citing *Living Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

[6] *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (citation omitted).

[7] *Merritt v. Countrywide Fin. Corp.*, 583 F. App'x 662, 665 (9th Cir. 2014) (citing *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1372 (10th Cir. 1979) ("Pleading on 'information and belief' in appropriate circumstances fits well with the spirit of the rules.")); *see also Reso v. Artisan Partners Ltd. P'ship*, No. 11–873, 2011 WL 5826034, at * 4 (E.D. Wis. Nov. 18, 2011) (Defendant "fails to cite any case that stands for the proposition that allegations made on 'information and belief', can be disregarded").

[8] *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citations omitted); *see also Yagman v. Galipo*, No. 12-7908, 2012 WL 5458072, at *4 (C.D. Cal. Nov. 5, 2012).

[9] Defendants claim Plaintiff "incorrectly asserts that a Section 36(b) claim may be based *either* on excessive fees *or* on an allegedly flawed fee approval process." Defs.' Mot. at 15 (citing Compl. ¶¶ 40-45). However, even a cursory reading of those paragraphs make clear that Defendants have mischaracterized Plaintiff's allegations. What Plaintiff asserts is that where there has been a flawed process, the fee "must be given greater scrutiny."

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 7

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

supporting the facts they dispute. Defendants' brief, which includes a litany of self-serving, untested facts, reads more like a trial brief than a motion to dismiss on the pleadings. But "a motion to dismiss is not the appropriate procedural vehicle to dispute the facts alleged in a complaint." *Zander v. Tropicana Entm't, Inc.*, No. 2:13-00848, 2014 WL 794212, at *2 (D. Nev. Feb. 26, 2014) (citing *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)).

While *Jones* provides guidance on the liability standard in §36(b) cases, that decision related to a motion for summary judgment and does not change or affect the pleading standard for a motion to dismiss. The Court should reject Defendants' attempts to circumvent the accepted rules upon which a complaint should be analyzed on a motion to dismiss.

**B.     Evaluating Section 36(b) Claims on a Motion to Dismiss**

The single issue at this stage of the proceedings is:

> "[W]hether Plaintiffs' [ ] Complaint, taken as a whole, pleads sufficient facts to support an inference that the investment advisory fee, given all the surrounding facts and circumstances, 'is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining.'"

*In re Blackrock Mut. Funds Advisory Fee Litig.* ("*Blackrock*"), No. 14-1165, 2015 WL 1418848, at *8 (D.N.J. Mar. 27, 2015) (quoting *Jones*, 559 U.S. at 346).

To answer this question, courts are primarily guided by assessing whether six factual inquiries—called the "*Gartenberg* factors"—have been adequately alleged to the extent they can be at the pleadings stage. *See Jones*, 559 U.S. at 344 (citing *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 929 (2d Cir. 1982)). The *Gartenberg* factors include: (1) the nature and quality of the services provided; (2) comparative fees; (3) economies of scale; (4) fall-out benefits (i.e., indirect profits to the adviser attributable in some way to the existence of the fund); (5) the profitability of the adviser in providing services to the fund; and (6) the independence and conscientiousness of the directors. *Id.* at 344 & n.5.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

Even though Plaintiff's Complaint pleads facts relating to all of these factors, a plaintiff "'need not address all of the *Gartenberg* factors to survive a motion to dismiss if, when taken as a whole, the complaint demonstrates a plausible claim for relief under § 36(b).'" *Blackrock*, 2015 WL 1418848, at *4 (quoting *Kasilag*, 2012 WL 6568409, at *2 (citing *Reso*, 2011 WL 5826034, at *5–6 (collecting cases)) (emphasis added); *see also Goodman v. J.P. Morgan Invest. Mgmt,, Inc.*, No. 2:14-414, 2015 WL 965665, at *4 (S.D. Ohio Mar. 04, 2015); *Zehrer v. Harbor Capital Advisors, Inc.*, No. 14 C 789, 2014 WL 6478054, at *2 (N.D. Ill. Nov. 18, 2014); *Am. Chemicals*, 2014 WL 5426908, at *4.

Rather, a plaintiff "'may state a §36(b) claim by alleging any combination of facts that plausibly support an inference that a particular fee, given all of the surrounding facts and circumstances, is disproportionately large to the services rendered in exchange for that fee.'" *Blackrock*, 2015 WL 1418848, at *4 (collecting cases and quoting *Curran v. Principal Mgmt. Corp., LLC.*, No. 09-0433, 2010 WL 2889752, at *9 (S.D. Iowa June 8, 2010), *vacated in part on other grounds*, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011)). Indeed, a court "must deny [defendant's] motion to dismiss—even if Plaintiffs have failed to sufficiently allege the existence of certain *Gartenberg* factors—if the . . . Complaint, taken as a whole, alleges facts that demonstrate a plausible claim for relief under § 36(b)." *Blackrock*, 2015 WL 1418848, at *4.

**C.    Plaintiff Has Pled Facts Sufficient Under Section 36(b) of the ICA**

Plaintiff's Complaint contains detailed allegations that, *as a whole*, more than adequately demonstrate that the fees Defendants charge the Fund are so disproportionately large that they bear no reasonable relationship to the services rendered and that they could not have been the product of arm's-length bargaining. Below, Plaintiff addresses each of the *Gartenberg* factors to highlight the sufficiency of the Complaint's allegations.

**1.    Economies of Scale**

Section 36(b) was enacted, in part, "because Congress recognized that as mutual funds grew larger, it became less expensive for investment advisers to provide the additional services.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 9

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

Congress wanted to ensure that investment advisers passed on to fund investors the savings that they realized from these economies of scale." *Migdal*, 248 F.3d at 326-27. Investment advisory services, which consist primarily of research and security selection for a fund, require an initial investment in technology and infrastructure.  However, technology and system costs do not substantially increase as assets in the fund grow. Significant increases in asset levels also do not necessarily require more holdings in the portfolio, and portfolio managers make essentially the same investment decisions as the assets in the fund change. *See* Compl. ¶ 65. Because costs associated with the investment advisory process do not increase with assets under management, the fund's adviser realizes economies of scale. Rather than passing on these economies-of-scale savings to the Fund and its shareholders, Plaintiff alleges Defendants improperly retain the benefit of the massive economies of scale attendant with running the largest bond fund in the world.  *Id.* ¶¶ 75-80.

Defendants attack the sufficiency of Plaintiff's allegations regarding economies of scale on four grounds: (1) Plaintiff's allegations are conclusory (Defs.' Mot. at 16); (2) Plaintiff has not alleged facts concerning Defendants' costs of services (*id.* at 17-18); (3) Defendants did share some economies of scale with the Fund's shareholders (*id*. at 18); and (4) the fees paid by the Fund's shareholders would have increased as assets under management declined if breakpoints had been in place (*id.* at 19). Defendants also rely on *Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 411 (2d Cir. 1989), to suggest a pleading standard with regard to economies of scale—but that case was actually a post-trial appeal.

### a.      Plaintiff's Allegations Are Far From Conclusory

Defendants mischaracterize the Complaint in an attempt to discredit its allegations about economies of scale. Defendants theorize that the Complaint "alleges nothing more than that TRF is very large." Defs.' Mot. at 16. But the Complaint details how economies of scale function generally and how Defendants specifically have wrongly withheld the benefits of operating the world's largest bond fund at the expense of Plaintiff and the other shareholders.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 10

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

1    Defendants have enjoyed massive economies of scale as the Fund has grown over time to

2    be the largest bond fund in the world but have not adequately shared those benefits with the

3    Fund. Compl. ¶ 75. Independent analysts have repeatedly raised concerns about Defendants'

4    failure to pass on the benefits of economies of scale to the shareholders such as: "Total Return

5    charges too much in light of its size," *id.* at ¶ 53, and "[t]he fund's annual expense

6    bite…certainly looks reasonable at first blush . . . But we're talking about the largest mutual fund

7    in the world here."  *Id.* at ¶ 55; *see also*, *id.* at ¶¶ 54, 56, 79-80.

8                    **(i)     Economies of Scale in Investment Advisory Services**

9        The investment advisory services for a $1 billion versus a $10 billion dollar fund are

10   virtually identical. *Id.* at ¶ 67. Bill Gross made this very point when he compared the Total

11   Return Fund to the Harbor Bond Fund, a fund he has advised in a manner he could not

12   distinguish from the Total Return Fund. *Id.* ¶ 99. Although the Harbor Bond Fund is

13   substantially smaller than the Total Return Fund, Gross claimed that the only difference between

14   the two funds were their "size and fees," not the costs associated with advising them. *Id.*

15       As Plaintiff alleges from the available public data, the benefits of economies of scale with

16   regard to investment advisory services have not been shared with the Fund as the Fund has

17   grown. *Id.* at ¶¶ 77-78, 93-94, 102, 107, and 121-123. For example, Defendants have

18   implemented no breakpoints in their fee schedules to share the economies of scale they enjoy

19   with the shareholders of this $230 billion fund. *Id.* at ¶ 76. Breakpoints are "scheduled reductions

20   in the rate of the … fee as net assets under management increase." *In re American Mutual Funds*

21   *Fee Litig.* ("*Am. Mutual*"), No. 04-5593, 2009 WL 5215755, at *7 (C.D. Cal. Dec, 28, 2009).

22   Defendants provide no breakpoints to investors in the Fund. However, they do offer breakpoints

23   starting at the $25 million level to large investors who invest in a separate account offered by

24   PIMCO, which is also called "Total Return" ("Total Return separate account") and which

25   Plaintiff alleges contains the same or substantially similar underlying investments as the Total

26   Return Fund. *Id.* at ¶¶ 92-93. That Defendants implemented breakpoints for the Total Return

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 11

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

separate account suggests that Defendants do experience economies of scale in the provision of investment advisory services.

It is not surprising that such large private investors enjoy breakpoints, as they have the ability to negotiate at arm's length—a luxury not afforded to Plaintiff and the Fund's other retail shareholders. *Id.* at ¶¶ 95-96. Indeed, Morningstar cited the "long-standing issue [ ] surrounding [ ] economies of scale—PIMCO Total Return doesn't have any management fee breakpoints…" as a reason they lowered the PIMCO Board Quality grade to a "D." *Id.* at ¶80.

> (ii)      **Economies of Scale in Supervisory and Administrative Services**

With regard to administrative fees, the typical cost of providing those services is three basis points. *Id.* at ¶83. While PIMCO touts that it experiences economies of scale due to its substantial market presence, *id.* at ¶81; it charges the Fund shareholders *seven to eleven times* more than the typical three basis points for providing administrative services; *id.* at ¶82-83. As industry analysts have noted, Defendants' administrative fee rates bear little relation to the true cost of services that are otherwise poorly explained to investors. Compl. ¶¶ 53-56. In a September 2014 review, Morningstar noted that parity in the rate for PIMCO's supervisory and advisory services was deeply problematic: "it doesn't make sense that the true cost of servicing one of the best-run mutual funds in the history of the business is anywhere remotely close to the fair value of its investment advisory services." Compl. ¶ 56. Morningstar further pointed out that "it's a matter of transparency and allowing shareholders to understand whether the board is doing enough to make sure that investors aren't overpaying for commodified services. . . ." *Id.* For these "commodified services," the Fund shareholders paid over *$1.2 billion* in 2013. *Id.* at ¶82.

> (iii)     **Economies of Scale in Distribution and Servicing**

Nor have the Fund shareholders benefitted from the economies of scale with regard to the distribution and servicing fees. While advances in computing and communication technologies have resulted in exponential efficiencies that have dramatically reduced the costs of servicing mutual funds, *id.* at ¶85, PIMCO Investments has *increased* the fees charged for distribution and

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 12

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

servicing. *Id.* at ¶86. In fact, the distribution fees, which have not been reduced in the past 10

years, are based on the net asset value of the fund, and not on distribution activity or the costs for

such activity. *Id.* at ¶¶60, 62. Morningstar has criticized PIMCO's distribution and servicing fees

for being "not competitive." Compl. ¶ 64. Indeed, there are typically lower cost ratios associated

with running a larger fund; however, the Fund's fees have grown at the same rate as the

underlying assets, without regard to actual costs. *Id.* at ¶121.

### (iv) Plaintiff's Economies-of-Scale Allegations Are Sufficiently Detailed

The most recent court to rule on this issue found allegations less detailed than Plaintiff's

here to be sufficient to allege that an adviser failed to pass on the benefits of economies of scale.

*Compare Blackrock*, 2015 WL 1418848, at *6-7 (plaintiffs alleged the adviser's fee schedule did

not give meaningful benefits to the fund's shareholders from the economies of scale enjoyed by

the adviser as assets increased and that fees paid were far higher than the fees charged by

comparable sub-advised funds negotiated at arm's length) *with* Compl. ¶¶ 77-78, 82-83, 93-94,

102, 107, and 121-123  (containing similar allegations and also alleging, *inter alia,* that the Total

Return Fund shareholders were not offered *any* breakpoints and that costs do not increase with

assets such that the Fund's fees could not be the product of arm's-length bargaining and do not

meaningfully share economies-of-scale benefits enjoyed by PIMCO). Moreover, here,

Defendants' own evidence demonstrates that the advisory services provided to the Fund have not

changed since at least 2009.  *See* Knowles Decl. Ex. M (ECF No. 29-1).[10]

As the *Blackrock* court noted, several other courts "have found similar allegations

sufficient to indicate that the adviser-defendant has received economies of scale not shared with

the mutual fund."  *Blackrock*, 2015 WL 1418848 at *7. *See, e.g.*, *Zehrer*, 2014 WL 6478054, at

*4 (finding allegation that "Harbor Capital received 'economies of scale' benefits as the Fund

---

[10] The same Advisory Agreement has been in effect since 2009 and has been approved annually. Similarly, the Administration Agreement Defendants rely upon has not changed since April 1, 2012. *See* Knowles Decl. Ex. N.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 13

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK**
**WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

grew that were not passed on to the Fund" sufficient at 12(b)(6) stage); *Am. Chemicals*, 2014 WL 5426908, at *6 (holding sufficient to state a §36(b) claim on this factor allegations that the defendant did not pass on economies of scale in part due to advances in computing and communication technologies and an increase in defendant's assets did not mean defendant's workload or costs in managing the assets had increased);[11] *Reso*, 2011 WL 5826034, at *9 (stating that plaintiff's "strongest allegations relate to the economies of scale factor" where plaintiff alleged facts that defendant's fee was "reduced only slightly over the course of amassing a large amount of assets," but that the defendant did "not suffer significant additional expenditures over the course of that expansion"); *Curran*, 2010 WL 2889752, at *8 (finding that the plaintiffs had adequately pled the "economies of scale" factor where breakpoints to the fees were "immaterial"); *Sins v. Janus Capital Mgmt., LLC*, No. 04-01647, 2006 WL 3746130, at *12 (D. Colo. Dec. 15, 2006) (explaining that where the plaintiff alleged that an increase in fund assets and lack of breakpoint levels could show disproportionality, the "economies of scale" factor was adequately pled).

### b.    Plaintiff Need Not Allege Detailed Facts of Defendants' Cost Savings from Economies of Scale

Defendants alternatively seek dismissal on the theory that Plaintiff has not demonstrated wrongly withheld economies of scale because he has not alleged the precise costs that PIMCO has incurred in advising and servicing the Fund. Despite not being required to furnish such information, Plaintiff has included substantial factual allegations regarding the costs associated with the Fund. *See, e.g.*, Compl. ¶¶ 65, 75, 67, 85, 121. At best, Defendants insinuate that Plaintiff should be required to include more specific details on PIMCO's costs.

This level of detail, however, is not required to survive a motion to dismiss. As the Ninth Circuit has explained in the ERISA context—which has parallel applicability to claims brought

---

[11] The *Am. Chemicals* court also found that "[b]ecause allegations based on economies of scale depend in part on the status of the market as a whole, Plaintiff's inclusion of general information regarding the market is not irrelevant on this point . . ." *Id.*

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 14

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

by mutual fund shareholders against the fund complexes under the ICA as both involve breaches of fiduciary duties—a plaintiff often will not have much information upon the filing of a complaint given the fiduciary often has exclusive control of the information:

> Where a fiduciary exercises discretionary control over a [Fund], and assumes the responsibilities that this control entails, the victim of his misconduct often will not, at the time he files his complaint, be in a position to describe with particularity the events constituting the alleged misconduct. These facts will frequently be in the exclusive possession of the breaching fiduciary.

*Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995). The Eighth Circuit reaffirmed this point in *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009):

> No matter how clever or diligent, [ICA] plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences. . . . If plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by [the ICA] will suffer.

*Id.* at 598. Defendants well know that the detail regarding cost information they criticize Plaintiff for not including in his Complaint is not publicly available. Where "specific financial information is not available prior to discovery," courts have refused to dismiss Section 36(b) claims based upon the lack of information regard this factor. *See Krantz v. Fidelity Mgmt. & Research Co.*, 98 F. Supp. 2d 150, 159 (D. Mass. 2000). As the court in *Curran* noted, such an inquiry into essentially whether shareholders actually benefitted from economies of scale involve the type of "factual inquiry that would be inappropriate in the context of a Rule 12(b)(6) motion, where the Court must take Plaintiff['s] factual allegations as true and make all reasonable inferences in favor of Plaintiff[ ]."  2010 WL 2889752, at *9.

### c.      Defendants' Factual Arguments About Shared Economies of Scale are Premature

Defendants' inconsistent position that they have shared some economies of scale with the Fund's shareholders by implementing some new services improperly advances a factual dispute in a motion to dismiss—an inquiry that is inappropriate for resolution on a motion to dismiss. *See Leatherman*, 507 U.S. at 164. At this stage of the proceedings, a court's duty "is not to

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 15

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

challenge or otherwise test the strength of the allegations within the . . . Complaint." *Blackrock*, 2015 WL 1418848, at *8 ("arguments regarding the strength of the [ ] Complaint when tested by the facts should be made at a later time"); *see also Am. Chemicals*, 2014 WL 5426908, at *4 (factual disputes are not before the court on a motion to dismiss); *Kasilag*, 2012 WL 6568409, at *3 (factual disputes are more appropriately addressed at summary judgment); *Curran*, 2010 WL 2889752, at *9 (same).

Even if one considers Defendants' factual claim, Defendants fail to show how these new services benefit the Fund. The new services include constructing a new global headquarters and a number of other items that benefit Defendants and their business as opposed to the Fund and its shareholders. *See* Defs.' Mot. at 7; Knowles Decl. Ex. E at 90. Defendants' argument implies that the Fund's shareholders should bear the brunt of these services simply because the Fund is so large. This half-hearted effort is hardly a meaningful passing on of economies of scale. More telling than the self-serving statements of the Board are the observations of independent researchers like Morningstar that noted in March 2014 that "[i]t's difficult to pin down why [the issue of economies of scale] has failed to gain more attention within PIMCO, particularly given Gross's occasional public comments about the headwind of high fund costs—in a 2009 column *he referred to 0.75% bond fund expense ratios as an "extreme absurdity*." Compl. ¶79 (emphasis added). Other observers have pointed out that the expense ratios at PIMCO cannot be justified by any better services. As pointed out by a Kiplinger writer, "the annual expense ratio of 0.75% for Pimco Total Return D (PTTDX), *the share class that's available without a load through many discount brokers*, imposes a large hurdle for Gross and his team to overcome. The fee is way too high."  Compl. at ¶ 53 (emphasis added).

### d.   A Decline in Assets Under Management Does Not Alleviate Defendants' Fiduciary Duty

Defendant's final attack is the twisted argument that the fees paid by the Fund's shareholders would have increased as assets under management declined if breakpoints had been

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 16

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

in place. This argument is as nonsensical as it is conjectural. First, Defendants speculate that because the Fund's assets have declined, Fund shareholders would necessarily pay more had breakpoints been offered. But that would depend on where the breakpoints were set and whether the Fund's assets declined past that point. Defendants also point out that the Board considered that "breakpoints are a proxy for charging higher fees on lower asset levels and that when a fund's assets decline, breakpoint may even reverse, which causes expense ratios to increase." Defs.' Mot. at 19. But Defendants set breakpoints for the Total Return separate account that is sold to private investors, which should be taken as an admission that economies of scale exist in providing advisory services. Compl. ¶93. Perplexingly, by making this argument, Defendants would seem to suggest that they may have charged the private investors too high a fee on lower asset levels for that fund. Further, the last breakpoint for the Total Return separate account offered to private investors is set at the $50 million level. Nevertheless, even if the last breakpoint was set at $50 million or even 100 times that at $5 billion, at its current asset level the Fund would not have declined past that point to trigger a higher breakpoint level. Finally, even if the Fund declined to a lower breakpoint level, Defendants ignore all the savings the Fund shareholders would have enjoyed up to that point. As the Second Circuit noted in *Gartenberg*, to the extent advisers "tended 'to reduce their effective charges as the fund grows in size,' the Senate Committee noted that such a reduction represents 'the best industry practice [which] will provide a guide.'" *Gartenberg*, 694 F.2d at 929 (citation omitted).

Courts have also found that alleging that distribution fees surpass the value of the services provided and do not correspond to the type of services performed but, rather, resemble advisory fees is sufficient to raise an inference that the distribution fees constitute additional and excessive compensation for advisory services subject to a § 36(b) claim. *See, e.g.*, *Curran*, 2010 WL 2889752, at *11. Plaintiff has not only included allegations similar to those pled in *Curran*, *see* Compl. ¶¶ 60-64, 86, but also has given specific and detailed examples of problems he has had with PIMCO's services. *Id.* ¶ 115.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 17

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

In short, Defendants' arguments miss the mark. The factual allegations in Plaintiff's Complaint regarding economies of scale easily allow for an inference that Defendants did not meaningfully share the benefits they realized from economies of scale with the Fund's shareholders with regard to the advisory, administrative, as well as distribution fees charged.

## 2.    Comparative Fees

The Complaint's allegations as to the second *Gartenberg* factor adequately demonstrate that the fees charged to comparable funds are lower than what Defendants charge Fund investors. The fees paid to investment advisers by private investors and to sub-advisers of a fund provide a measure of how much the investment advisory services actually cost. Notably, sub-advisers also are for-profit investment management companies and, therefore, the fees they negotiate for their provision of sub-advisory services serve as a proxy for the costs of their services plus a reasonable profit. As the Eighth Circuit declared, "[t]he purpose of an inquiry into the fees paid by institutional [and] non-fiduciary clients is to determine what the investment advice is worth." *Gallus v. Ameriprise Fin., Inc.*, 561 F.3d 816, 824 (8th Cir. 2009), *vacated by*, 559 U.S. 1046 (2010). Here, Plaintiff has alleged in great detail that three comparable investment products—the Total Return separate account, the Harbor Bond Fund, and the Total Return Active ETF—pay far less for comparable services.

Defendants make three baseless arguments to support their position that the competitor fund are inapt. First, Defendants challenge the relevance of all three of Plaintiff's comparators. Defs.' Mot. at 19. Second, Defendants claim the Fund's fees were at or below the mean and median for its competitors. Defs.' Mot. at 1-2, 24. Third, Defendants argue that Plaintiff has not established an adequate predicate to demonstrate the similarity between the Fund and the comparators Plaintiff offers. *Id.* at 19-22. The Court should reject all of these arguments.

### a.    Relevancy Determinations Are Grossly Premature

Defendants' challenge to Plaintiff's choice of comparator funds on relevance grounds is inappropriate as "the ultimate weight of th[e] comparison is not before the Court [on a motion to

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 18

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

dismiss]." *Blackrock*, 2015 WL 1418848, at *5; *see also Am. Chemicals*, 2014 WL 5426908, at *5-6 (finding that the disagreements over the degree of relevancy of a fee comparison should not be decided at the pleadings stage). The relevant inquiry now is whether, taking the factual allegations of the complaint as true, the comparison contributes to Plaintiff's basis for his claim. *Id.* For the reasons discussed below, Plaintiff's comparisons satisfy this factor.

### b. The Supreme Court Has Determined that Comparisons to Fees of Other Captive/Peer Funds Are Problematic

Defendants assert that the Fund's total fees and expenses were comparable to those for similar funds managed by other investment advisers, going so far as to claim that "[f]ees that are at or *below* the mean and median of TRF's competitors are easily within the range of fees that investors reasonably expect to pay." Defs.' Mot. at 2. As an initial matter, what "investors reasonably expect to pay" is Defendants' own make-believe standard that finds no support in the caselaw. Defendants go further and allege that the fees charged "are accordingly well within the range of fees for which TRF's independent trustees 'could' fairly bargain for with PIMCO." *Id.* However, as counsel for Defendants is well aware—as they were counsel for the adviser in *Jones*—the Supreme Court has dispatched this argument, cautioning that "courts should not rely too heavily on comparisons with fees charged to mutual funds by other advisers. These comparisons are problematic because these fees, like those challenged, may not be the product of negotiations conducted at arm's length."[12] *Jones,* 559 U.S. at 350-51. As further explained by the Second Circuit:

> [T]he existence in most cases of an unseverable relationship between the adviser-manager and the fund it services tends to weaken the weight to be given to rates charged by advisers of other similar funds…. "[I]nvestment advisers seldom, if ever, compete with each other for advisory contracts with mutual funds."

---

[12] As explained by Judge Posner in a dissenting opinion subsequently cited favorably by the Supreme Court in *Jones*, "[t]he governance structure that enables mutual fund advisers to charge exorbitant fees is industry-wide, so [an approach comparing fees charged to other captive funds] would if widely followed allow those fees to become the industry's floor.'" *Jones v. Harris Assocs. L.P.,* 537 F.3d 728, 732 (7th Cir. 2008).

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

*Gartenberg*, 694 F.2d at 929 (citation omitted). Accordingly, "[r]eliance on prevailing industry advisory fees will not satisfy §36(b)." *Id.* Defendants' fee comparisons are unavailing.

### c.   Comparators Offered by Plaintiff Satisfy This Factor

Defendants' attacks on the factual predicate for Plaintiff's three fee comparators fall well short of providing a basis for dismissal.

### (i)   The Total Return Fund Separate Account Versus the "Total Return" Fund

Plaintiff's first comparator is to the Total Return separate account that PIMCO offers to private investors. Plaintiff alleges, *inter alia*, that: (1) the same portfolio managers of the Total Return Fund also provide their services to private investors for a similarly-titled separate account, Compl. ¶92; (2) Defendants charge the private investors much lower fee rates than Plaintiff and shareholders of the Fund for the same advisory services, *id.* at ¶93; (3) PIMCO provides breakpoints in the fee schedule offered to Total Return separate account, which start at just $25 million in assets under management, *id.*; and (4) upon information and belief, the Total Return separate account contains the same or substantially similar underlying investments as the Fund, *id.* at 92.

Defendants criticize Plaintiff for alleging the similarity in investments between the Fund and the Total Return separate account upon information and belief, Defs.' Mot. at 20. As previously discussed, pleading upon information and belief is appropriate, *Reso*, 2011 WL 5826034, at * 4, especially where the information is in the control of Defendants. Further, where a complaint contains allegations regarding the lower advisory fees an adviser charges its institutional clients as well as an independent mutual fund for the same services, such allegations sufficiently satisfy this factor. *Kasilag*, 2012 WL 6568409, at *5. Defendants' reliance on *Jones* for the proposition that Plaintiff should assert more facts about the services provided to different clients, Defs.' Mot. at 19-20, ignores the fact that *Jones* involved a decision on summary judgment after extensive discovery. At the motion-to-dismiss stage, Plaintiff need not establish

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 20

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

proof of his claims. Discovery is required for Plaintiff to develop evidence that the services offered to the Total Return separate account are substantially similar to those offered to the Fund. *See Gallus*, 561 F.3d at 819.  At this pleading stage, this fee comparator offered by Plaintiff is more than sufficient to withstand a motion to dismiss.

**(ii)     The Total Return Fund versus The Harbor Bond Fund**

Plaintiff offers as his second comparator the Harbor Bond Fund, a bond fund with a "total return" investment goal. Compl. ¶ 98. The same PIMCO managers who advise the Total Return Fund also provide sub-advisory services to the Harbor Bond Fund. *Id.* at ¶ 99. Not only do the two funds have the same portfolio managers, they also have experienced virtually the same performance, suggesting that they held virtually identical investments. *Id.* at ¶ 100. And yet, the shareholders of the Harbor Bond Fund are charged dramatically lower fees than shareholders of the Total Return Fund. *Id.* at ¶100.

Defendants will argue that there is barely any difference in the advisory fees paid because the Harbor Fund pays 23 basis points for advisory services, and the Total Return Fund pays 25 basis points, "just" two basis points more. However, an examination of the difference in *dollars* (compensation received by PIMCO) pulls back the curtain on the real effect of what may be perceived as "just" two basis points:  PIMCO accepted compensation of just $17 million annually for providing investment advisory services for a similar portfolio—the Harbor Fund—with similar investment returns run by the same investment managers while charging its own Total Return Fund shareholders over $641 million, *id.* at ¶102. As early as July 2010, third-party financial analysts recommended investing in the Harbor Bond Fund rather than the Total Return Fund because while "[the Total Return Fund's fees are] on the high side for many retail investors… [t]he Harbor Bond Fund —which is subadvised by PIMCO—is managed by Mr. Gross in the same fashion yet is cheaper and boasts one of the best records in the intermediate-term bond category, according to Morningstar."  *Id.* at ¶ 103. When asked at an interview about the difference between the Harbor Bond Fund and the Total Return Fund, Gross responded,

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 21

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK**
**WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

"There's not much difference at all, other than size and fees."  *Id.* at ¶ 99. A more apt comparator fund is hard to envision.

Defendants attempt to justify the disparity in fees charged to the Total Return Fund from those charged to the Harbor Bond Fund simply because PIMCO serves in different capacities for the two funds: as an investment adviser to the Total Return Fund and as a sub-adviser to the Harbor Bond Fund. Defs.' Mot. at 21-22. However, in both instances, PIMCO is providing investment management services, such as research and security selection.  And, what Defendants completely sidestep is the admission by Bill Gross that other than size and fees, "[t]here's not much difference at all" between the Harbor Bond Fund and the Total Return Fund. Compl. ¶99. Further, any arguments Defendants raise regarding the difference in services provided in the various capacities "is a merit-based argument that is better suited for summary judgment." *Blackrock*, 2015 WL 1418848, at *5; *see also e.g., Zehrer*, 2014 WL 6478054, at *4 ("[Defendant's] contention that it retains significant responsibility for the Fund's management is better suited for summary judgment."); *Kasilag*, 2012 WL 6568409, at *3 (explaining that the defendant-adviser's argument that it provided extensive services that were not delegated to the sub-adviser was more appropriate for summary judgment). Although Defendants argue that PIMCO provides more services to the Fund as the adviser (versus sub-adviser), Defs.' Mot. at 21, PIMCO charges an additional supervisory and administrative fee to the Fund for those services.

In any event, numerous courts have found that allegations such as those in Plaintiff's Complaint support an inference that the Fund's fees are disproportionately large and outside the range of what could be negotiated at arm's length.[13]  *See, e.g.*, *Blackrock*, 2015 WL 1418848, at

---

[13] Defendants rely on *Hoffman v. UBS–AG*, 591 F. Supp. 2d 522 (S.N.D.Y. 2008), for the proposition that investment advisers and sub-advisers perform distinct services that alone justify different fee arrangements. Defs.' Mot. at 22. In rejecting this rationale, the court in *Blackrock* points out that the plaintiffs in *Hoffman* had asserted that the advisers and sub-advisers performed distinct services. 2015 WL 1418848, at n. 7. In contrast, the *Blackrock* plaintiffs alleged that *Blackrock* performed the same or substantially the same services for the funds as the sub–advised funds. *Id.* Likewise, Plaintiff here has alleged that PIMCO performed the same or substantially the

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 22

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

*6; *Kasilag*, 2012 WL 6568409, at *5 (denying motion to dismiss where the advisory fee charged to a fund was, on average, three times more than the amount the adviser paid its sub-advisers for substantially the same services because plaintiffs "raised a plausible inference that [the defendant's] fees are excessive"); *Curran*, 2010 WL 2889752, at *9 (finding allegations that adviser-sponsor "charges more than the subadvisors, who allegedly provide the bulk of investment advice . . . support[s] a reasonable inference that [the adviser] collected excessive fees for its investment advising services of the Subject Funds"); *Sins,* 2006 WL 3746130, at *11 (finding that "allegations that Defendant's fees to third parties are significantly lower than that charged to the Funds for identical services support Plaintiffs' claim" under Section 36(b)); *Hunt v. Invesco Funds Group, Inc.*, No. 04-2555, 2006 WL 1581846, at *3 (S.D. Tex. June 5, 2006) (similar).

### (iii) The Total Return Fund versus the Total Return Active Exchange-Traded Fund

Plaintiff's third comparator is the PIMCO Total Return Active ETF ("ETF"). Both the Total Return Fund and the ETF were run by Gross, and both had the same asset allocations. Compl. ¶106. PIMCO designed the ETF to resemble its flagship Total Return Fund. *Id.* at ¶104. However, PIMCO accepted compensation of $20 million annually for managing and advising the ETF while charging $1.2 billion for investment advisory and administrative services to the shareholders of the Total Return Fund. *Id.* at ¶107.

As with the Harbor Bond Fund, Defendants rely on the argument that the ETF is a different product than the Total Return Fund and describe some of those differences. Defs.' Mot. at 22. However, the *investment advisory services* that PIMCO provides the two funds are substantially the same.  Further, whether the differences in services are so substantial as to justify the disparity in fees is beyond the scope of a 12(b)(6) motion. *See Blackrock*, 2015 WL 1418848,

---

same services for the Total Return Fund as for the Harbor Bond Fund and that the services were so close that even the returns of the two funds were similar. Compl. ¶102.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 23

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

1   at *5 (collecting cases). Plaintiff's allegations, accepted as true, are sufficient to satisfy this

2   *Gartenberg* factor.

3        Through any one or a combination of all three comparators, Plaintiff has pled a

4   substantial fee disparity between each comparator and the Fund for performing substantially the

5   same or similar services, which raises a plausible inference that Defendants' fees are excessive.

6        **3.      The Nature and Quality of Services**

7        When analyzing the allegations regarding the nature and quality of the services rendered

8   to the Fund, Defendants narrowly focus on only certain allegations and discuss them in isolation

9   while ignoring other relevant allegations. Defendants focus on three sections of the Complaint:

10  (1) allegations about the disparity in fees despite the similarity in services to comparator funds,

11  Compl. § V.C., (2) Defendants' failure to share economies of scale realized by Defendants in

12  relation to the services performed, *id.* at §V.B; and (3) the de minimis cost of administrative

13  services, *id.* at ¶83. This segmented reading of the Complaint invites the Court to err because a

14  complaint is to be read "as a whole, not parsed piece by piece to determine whether each

15  allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.

16       In addition to Plaintiff's detailed concerns regarding the nature and quality of services

17  provided to the Fund, Plaintiff also explains why that the services provided do not justify the

18  compensation PIMCO received. For example, the Fund failed to outperform its benchmark in

19  2012, with 60% of its peers outperforming the Fund, and continued to perform terribly in 2013,

20  trailing 70% of its peers. Compl. ¶¶ 36, 110. And yet, Plaintiff and other Fund shareholders

21  continued to pay PIMCO extraordinary compensation for the services because the fee rates are

22  simply applied against the assets under management—and bear no relationship to the quality of

23  the services. Remarkably, at a time where the Fund performed miserably, Defendants bled the

24  Fund of **$1.5 billion** in fees. Nor are the high administrative and distribution and servicing fees

25  justified because the services provided in exchange for those fees are poor. *Id.* at ¶¶ 112, 115.

26  Plaintiff himself has endured nothing but headaches when attempting to get basic services from

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 24

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

1   Defendants, including obtaining accurate and timely account information, being able to access

2   his online account, and having account-related transactions processed in a timely manner. *Id.* ¶

3   115 (listing 10 specific problems Plaintiff has encountered with the services provided by

4   Defendant over the years).

5          Defendants cite *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d 677, 687 (D. N.J.

6   2007) because that court dismissed a complaint that failed to address the actual services rendered

7   to the funds. Defs.' Mot. at 24-25. That comparison is inapposite. Not only has Plaintiff alleged

8   that the services rendered to the Fund in relation to the fees charged are poor, but he also

9   provided ten detailed examples of problems he has personally encountered with the services

10  Defendants provide. Defendants claim that Plaintiff ignores that the Fund has had good long-

11  term performance and allegations of underperformance alone are insufficient to prove that an

12  investment adviser's fees are excessive. *Id.* at 25. This is yet another factual dispute Defendants

13  incorrectly and prematurely inject at this stage of the pleadings and is an insufficient basis at the

14  pleading stage to grant a motion to dismiss.

15         Plaintiff's allegations regarding the nature and quality of services rendered to the Fund,

16  which should be viewed in combination with the other facts in the Complaint, *Braden*, 588 F.3d

17  at 594, provide more than sufficient support for the proposition that "the services provided have

18  not been of a quality or quantity that would justify the fee arrangement."  *In re Federated Mut.*

19  *Funds Excessive Fee Litig.* ("*Federated*"), No. 04-352, 2009 WL 5821045, at *8 (W.D. Pa. Sept.

20  30. 2009); *see also Reso*, 2011 WL 5826034, at *7 (allegations that de minimis and below par

21  services "at least raise the inference of deficiency in the nature and quality of services provided"

22  by the advisor).

23         **4.     Profitability**

24         Defendants misconstrue Plaintiff's allegations regarding profitability as simply asserting

25  that the Fund is large so it must be profitable. Defs.' Mot. at 29. To the contrary, Plaintiff

26  explains that while there are fixed costs associated with running a fund, the Fund's fees have

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 25

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

1  nonetheless inexplicably grown at the same rate as the assets of the Fund, despite the fact that the

2  Fund is one of the largest funds in the world. Compl. ¶ 121. Plaintiff also alleges that Defendants

3  have not meaningfully lowered any fees they charge the Fund in the past 10 years. *Id*. For

4  example, the supervisory and administrative fees the Fund has paid have skyrocketed from

5  $165.8 million in fiscal year 2003 to $608 million in fiscal year 2013, while the true costs of

6  these services have not tripled during that time.[14] *Id.* at ¶123. In addition, the Fund's profit

7  margins were above the median of publicly held investment management companies.[15]  *Id.* at

8  ¶118. In *Reso*, the court held that an allegation that the fund accounted for a larger portion of the

9  adviser's profits than the respective share the fund accounted for in the adviser's total managed

10  assets satisfied the profitability standard. 2011 WL 5826034, at *9. Plaintiff alleges far more

11  facts here regarding profitability, and Plaintiff's factual allegations relating to comparative fee

12  structures illustrate how the fees charged by Defendants constitute a large profit in exchange for

13  little or no extra work. *See Am. Chemicals*, 2014 WL 5426908, at *6. In any event, no one factor

14  should be parsed out separately as the factors are meant to be considered within the context of

15  the other allegations in Plaintiff's Complaint. *Braden*, 588 F.3d at 594.

16         **5.**    **Fall-out Benefits**

17         Defendants accuse Plaintiff of "threadbare allegations" regarding fall-out benefits, Defs.'

18  Mot. at 30, and not quantifying the benefits accruing to PIMCO, *id.* However, Plaintiff's

19  Complaint alleges that Defendants benefitted from the attraction of new customers for other

20  funds or products offered by them and from cross-selling Defendants' other funds and services to

21  current shareholders of the Fund. Compl. ¶124-5. Plaintiff also included three specific

22

23  [14] Plaintiff is unable to allege more specific information regarding profitability as such information is typically
considered highly proprietary by fund complexes and, as a result, not available absent discovery. Therefore, it is

24  impossible for Plaintiff to know Defendants' profit margins with respect to the Fund or how Defendants allocate
their costs between their various funds or products, or between their other lines of business.

25  [15] Defendants spend a chunk of this section discussing and raising factual disputes related to employee
compensation.  However, Plaintiff did not rely on any facts regarding employee compensation to support its

26  discussion of the profitability factor. Defs.' Mot. at 29-30.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 26

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

1   allegations which are based on Defendants' own documents: (1) given the size and number of

2   shareholders in the Fund, PIMCO can recommend to those investors that they also "check out

3   their mutual fund and ETF websites for more information and suggests that high-net-worth

4   investors seek out their 'PIMCO separate accounts.'" *Id.* ¶ 125; (2) PIMCO admits in its

5   Semiannual Report that as a result of PIMCO's relationship with the Trust, there are "possible

6   ancillary benefits to PIMCO's institutional investment business," *id.* ¶ 126; and (3) the Fund

7   pays brokerage commissions to Defendants or their affiliates, *id.* ¶ 127. For purposes of deciding

8   this motion, these allegations must be taken as true. *Living Holdings Ltd.*, 416 F.3d at 946.

9           Defendants criticize Plaintiff for not having more information quantifying the fall-out

10  benefits. However, this type of information is not publicly available and, therefore, cannot be

11  known with any more specificity without discovery. *See Concha*, 62 F.3d at 1503. Further,

12  allegations similar to those in Plaintiff's Complaint have been found sufficient to satisfy the fall-

13  out benefits factor. *See Am. Chemicals*, 2014 WL 5426908, at *5. And, as discussed above, this

14  one factor should not be viewed in isolation but, rather, should be considered within the context

15  of the entire Complaint. *Braden*, 588 F.3d at 594.

16          **6.      Independence and Conscientiousness of the Board**

17          Defendants are simply wrong when they claim that Plaintiff has not alleged sufficient

18  facts to call into question the independence of the Board or the thoroughness of the board

19  process. Defs.' Mot. at 26. In fact, it is hard to imagine more compelling facts at the pleading

20  stage.

21          As the Court in *Jones* explained, "[A] court's evaluation of an investment adviser's

22  fiduciary duty must take into account both procedure and substance." 559 U.S. at 351. Only

23  "[w]here a board's process for negotiating and reviewing investment-adviser compensation is

24  robust, a reviewing court should afford commensurate deference to the outcome of the

25  bargaining process." *Id.* at 351. But the Court further explained:

26

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 27

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

> [t]his is not to deny that a fee may be excessive even if it was negotiated by a board in possession of all relevant information, but such a determination must be based on evidence that the fee "is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining."

*Id.* (quoting *Gartenberg*, 694 F.2d at 928). However, "[i]n contrast, where the board's process was deficient or the adviser withheld important information, the court must take a more rigorous look at the outcome." *Id.*

Plaintiff has provided robust allegations regarding the Board's inadequate efforts, including both the substantive and procedural failures of the Board, which renders deference to their approval of fees improper. Compl. ¶¶ 136-55; *see Jones*, 559 U.S. at 351. For example, Plaintiff alleges that despite dramatic growth in the assets of the Fund and repeated criticisms regarding the expense ratios charged to the Fund by independent providers of investment research, the Fund's board has continued to approve the same fee schedules year after year. Compl. ¶ 49. Moreover, the Board never added a single breakpoint for the Fund, and Fund shareholders have never been offered any breakpoints in the fee schedule. *Id.* at ¶¶ 53-55, 76, 80, 154. This fact was significant to third party analyst, Morningstar: "Total Return is a glaring example [of a fund that] charge[s] a lot more than one might expect given [its] size. Of all the funds in the marketplace, this enormous portfolio should by all rights boast a truly low expense ratio in its peer group." *Id.* at ¶79. Morningstar summed up the problems with PIMCO's investment advisory and administrative fees as follows:

> For the fiscal year ended March 2014, Total Return's advisory fees totaled more than $641 million, while its supervisory and administrative fees clocked in at $608 million. *The proximity of those numbers is perplexing simply because the first number should represent what shareholders are paying for the expert, value-added services of an active money manager, while the second should account for the relatively commoditized costs that are otherwise associated with operating a fund and servicing shareholder accounts.*
>
> Even if one were to argue that some providers of "supervisory and administrative" services warrant more compensation than others, it doesn't make sense that the true cost of servicing one of the best-run mutual funds in the history of the business is anywhere remotely close to the fair value of its investment advisory services. Ultimately, though, it's a matter of transparency and allowing shareholders to understand whether the board is doing enough to make sure that

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 28

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

> investors aren't overpaying for commodified services, and while the annual report
> does describe what kinds of expenses are included in the "supervisory and
> administrative fees" line item, it does not break down those costs, as other
> competitors do.

*Id.* at ¶ 56. Morningstar noted as a "long standing issue[ ]" that "PIMCO Total Return doesn't have any management-fee breakpoints" and has stated that this issue "combined with newer concerns about the disruption to the funds' boards and their independence were enough to consider the current quality of the boards inferior and thus earn PIMCO a lowered Board Quality grade of D." *Id.* at ¶80.

The lack of independence of the trustees is a glaring problem at PIMCO. The slim number of independent trustees is astonishingly low and problematic for the Board's independence. By early 2014, only three independent trustees remained after one resigned and another was fired for questioning Gross's compensation. As alleged, when Board member William Popejoy dared challenge the excessive pay of PIMCO executives (*e.g.*, PIMCO awarded Gross $290 million in bonus compensation which was on top of his $200 million salary, *id.* at ¶¶38-39), he was immediately forced to resign. *Id.* at ¶¶39, 144. Along with the departure of a second independent trustee, Popejoy's dismissal left the board with a composition of just 60% independent trustees, well short of the industry norm of 75% independent trustees." *Id.* at ¶143. Moreover, it is a PIMCO insider who heads the Board—a fact that goes to the lack of the Board's independence. These facts, together with the facts regarding economies of scale not being shared with the Fund's shareholders and the disparity in fees charged to other, similar funds is more than sufficient for the Court to "infer that the directors did not adequately take into account important facts . . ." *See Reso*, 2011 WL 5826034, at *7.

Defendants instead myopically focus on the fact that the Board meets the technical requirement under the statute that at least 40% of the governing board must be disinterested. Defs.' Mot. at 26. Despite their insistence that they meet the technical requirements of § 36(b), Defendants have recently sought to change the composition of the Board by adding interested

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 29

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

trustees. *See* PIMCO SEC Proxy Statement for April 20, 2015 Special Meeting of Shareholders at p. 4 (Jan. 29, 2015), attached as Ex. B to the Lin Decl. Defendants also cite cases where compensation received by directors alone was found to be insufficient to support an inference that a board was not independent.[16] Defs.' Mot. at 27. While Plaintiff does point out that each Board member was compensated handsomely for a part-time job—receiving between $306,900 and $417,050 in 2013, Compl. ¶139—and oversaw between 167 to 175 portfolios, *id.* at ¶137,[17] Plaintiff pleads much more than bare compensation numbers. Defendants disingenuously claim Plaintiff provides "'naked assertions' [that] contain no factual content to permit an inference of even a mere possibility of misconduct." Defs.' Mot. at 28.  But this argument is misleading as it utterly ignores all the facts enumerated in the previous paragraphs that are in Plaintiff's Complaint.

Defendants also try to make much of the fact that the Fund's public disclosures discuss the materials and factors considered by the Board. Defs.' Mot. at 28. However, the discussion of factors considered by the Board contained in the Semiannual Report attached to Defendants' motion is nothing more than an untested, self-serving, boilerplate recitation likely carefully crafted by Board counsel to address the *Gartenberg* factors. Plaintiff expects that discovery will reveal a less-than-thorough consideration of these factors by a Board headed by an insider that approved contracts totaling over $1.5 billion in compensation for the Fund in Fiscal Year 2013 alone.

---

[16] Defendants point to *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338 (2d Cir. 2006) (*Amron* involved two complaints filed in 2003) to support their position that facts regarding the compensation of directors, the number of funds they oversee, and the number of directors that are independent are insufficient to satisfy this factor. However, Plaintiff's allegations go far beyond this by including numerous facts that would allow a court to draw an inference that the fee-approval process itself was flawed. *Compare* Plaintiff's Complaint to Complaint, *Amron*, 2003 WL 25659496 (S.D.N.Y. Aug. 6, 2003) (No. 1:03-05896) and Complaint, *Yampolsky v. Morgan Stanley Inv. Advisors Inc.*, 2003 WL 25659495 (S.D.N.Y. July 31, 2003) (No. 1:03-05710)).

[17] Defendant does not address this fact but it has been held that not considering each investment contract separately or independently could mask, for example, the profitability of the funds or economies of scale and "preclude[] a specific determination that [a fund's] investment advisory fees are in line with those that would be produced by informed arms-length negotiations."  *Federated*, 2009 WL 5821045, at *5.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

Indeed, it was only with discovery that the plaintiffs in *Am. Mutual*, 2009 WL 5215755, were able to develop evidence that, despite outward appearances:

> [T]he Unaffiliated Directors' [sic] did not diligently inquire into some issues of importance and failed to recognize the consequences of some of the information presented to them. . . . the Unaffiliated Directors accepted, with virtually no comment, statements made regarding compensation paid to CRMC and AFD employees either in the aggregate or in specific. Likewise, the directors regularly approved a 25 basis point 12b-1 fee, regardless of the assets under management, on the assumption that the increase in asset size was proportional to the increase in investors. However, the directors apparently failed to consider that the increase in assets under management resulted in significant part from appreciation of existing accounts and not the addition of new investors. Moreover, no evidence was presented that the fee was decreased as the assets under management substantially decreased between the middle of 2007 and the end of 2008. These failures are significant given the Unaffiliated Directors' important role as "independent watchdogs" with primary responsibility for protecting shareholder interests. [] Without exacting scrutiny by these directors, the possibility exists that issues of significant importance will not receive the attention they deserve, ultimately harming investors.

*Id.* at *55 (citing *Burks v. Lasker*, 441 U.S. 471 (1979)). *See also Gallus*, 561 F.3d at 824 (discovery raised questions regarding the veracity and accuracy of the materials provided to the board). Therefore, while the self-serving recitation in the semiannual report, at most, may create a factual dispute, this is beyond the scope of a Rule 12(b)(6) motion. Drawing all inferences in favor of Plaintiff as the non-moving party and reading Plaintiff's factual allegations as a whole, Plaintiff has presented sufficient allegations to allow for an inference of rubber-stamp approval of the contracts by the Board.

**D.   Defendants Ignore Relevant Cases and Rely on Inapposite Cases**

Defendants fail to bring to the Court's attention the fact that numerous courts have upheld §36(b) claims based upon similar facts to those set forth in Plaintiff's Complaint, including eight orders denying motions to dismiss post-*Jones*. *See Blackrock*, 2015 WL 1418848; *Goodman*, 2015 WL 965665;  *Zehrer*, 2014 WL 6478054; *Am. Chemicals*, 2014 WL 5426908; *Kasilag*, 2012 WL 6568409; *Reso*, 2011 WL 5826034; *Curran*, 2010 WL 2889752; *Federated*, 2009 WL 5821045; *Sins*, 2006 WL 3746130; *Hunt*, 2006 WL 1581846; *Dumond v. Mass. Fin. Servs. Co.*, No. 04-11458, 2006 WL 149038 (D. Mass. Jan. 19, 2006); *Jones v. Harris Assocs. L.P.*, No. 04-

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 31

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

8305, 2005 WL 831301 (N.D. Ill. Apr. 7, 2005); *Strigliabotti v. Franklin Res. Inc.*, No. 04-0883, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005); *Gallus v. Am. Express Fin. Corp.*, 370 F. Supp. 2d 862 (D. Minn. 2005).[18]  Many of the complaints in these cases are similar to Plaintiff's Complaint because Plaintiff's counsel were involved in a majority of them.[19] And while Defendants cite the *Kasilag* decision for its holding on the standing issue, Defs.' Mot. at 35, they omit the important and relevant fact that the *Kasilag* court denied the motion to dismiss as to the sufficiency of the complaint. The omission is especially glaring because Ropes & Gray, Defendants' counsel here, represented the adviser in *Kasilag*.[20]

Knowing that none of the recent §36(b) decisions support their position, Defendants instead cite to an earlier generation of cases which bear little resemblance to Plaintiff's Complaint or where the cases were dismissed based upon a much more developed factual record. For example, Defendants reliance on *Migdal* is misplaced because the complaint in that case contained only conclusory allegations amounting to nothing more than "the mere recitation of boilerplate statutory language," 248 F.3d at 328—a far cry from Plaintiff's Complaint. *Hoffman*, another case upon which Defendants rely heavily, is also inapposite. *Hoffman* was a putative class action that focused mainly on distribution fees and their use for shelf space payments, and the allegations regarding the investment advisory fees appeared to be an afterthought. Rather than deal with the specifics of any particular fee (as Plaintiff does here), the *Hoffman* plaintiffs directed their allegations at the funds' overall expense ratios. Complaint. ¶¶174-83, 2006 WL 1792864 (S.D.N.Y. May 3, 2006) (No. 05-6817). And unlike Plaintiff here, the *Hoffman* plaintiffs did not draw any comparisons with fees paid by the defendants' other clients for

---

[18] The court in *Sivolla* also denied a motion to dismiss, but the only challenge raised in that motion was on the basis of standing. *See, infra*, Section III.E.

[19] Counsel for Plaintiff here were involved in the *Reso*, *Curran*, *Federated*, *Sins*, *Hunt, Dumond, Jones, Strigliabotti*, and *Gallus* cases. Several courts have cited the similarities in the complaints as support for denying a motion to dismiss, as did Judge Cercone in the *Federated* case. *See, e.g.*, *Federated*, 2009 WL 5821045, at *8 (and cases cited therein); *see also Blackrock*, 2015 WL 1418848, at *6- 8 (citing *Kasilag, Curran, Sins, Hunt, Zehrer, Reso, Goodman*, and *Am. Chemicals*).

[20] *See* n. 2, *supra*.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

similar services, focusing instead on general comparisons with the industry.[21] *Hoffman* Compl. ¶198. Finally, *Krinsk*, 875 F.2d 404, a case frequently cited by Defendants, involved an appeal of a case where the §36(b) claims were dismissed after trial.

As a number of the recent cases have already been discussed throughout this brief, Plaintiff will not repeat the case holdings. But Plaintiff will draw on the summary provided by the court in *Blackrock* (the most recent court to address a §36(b) motion to dismiss) of the critical question for a challenge to a §36(b) complaint at the motion-to-dismiss stage of a case:

> Overall, the single issue at this stage of the proceedings is whether Plaintiffs' Consolidated Complaint, taken as a whole, pleads sufficient facts to support an inference that the investment advisory fee, given all the surrounding facts and circumstances, "is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Jones*, 559 U.S. at 346. While the *Gartenberg* factors serve as a lens through which to consider the totality of the facts alleged in the Plaintiffs' Consolidated Complaint, it is not a requirement to establish these factors at this stage; rather, the appropriate consideration is whether the alleged facts demonstrate a plausible claim for relief under Section 36(b). Plaintiffs have made factual allegations regarding the nature of BlackRock's services in exchange for the investment advisory fee, that this fee is high in comparison to what BlackRock charges similar clients for the same or substantial same services, that the value increase of the Funds' assets have come with little additional work for BlackRock, and that BlackRock can charge a higher fee in part because the Boards are not sufficiently independent and conscientious in reviewing these fees. . . . [T]hey have pled sufficient facts about the advisory fees paid to BlackRock, and their relationship to the services rendered, to present a plausible claim that the fees are disproportionately large.

2015 WL 1418848, at *8; *see also Zehrer*, 2014 WL 6478054, at *3 (courts have allowed complaints to survive if a plaintiff alleges specific facts about the fees paid to the defendant and their relationship to the services rendered); *Am. Chemicals*, 2014 WL 5426908, at *7 (similar allegations as those contained in the *Blackrock* complaint met Rule 8's liberal pleading

---

[21] Plaintiff's Counsel is aware of two other recent §36(b) cases where motions to dismiss were granted. Both cases are easily distinguishable. The complaint in *Laborers' Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, (6th Cir. 2014) was dismissed because plaintiffs challenged the "lending fee" charged by the affiliate of the investment adviser for the mutual fund, a practice for which the adviser had received an exemption letter from the Securities and Exchange Commission. Like *Hoffman*, the complaint in *Turner v. Davis Select Advisers LP*; No. 08-421, Slip. Op. (D. Ariz. June 1, 2011), focused on 12b-1 fees charged for sales and distribution practices and challenged the *use* of the fees (versus the excessive nature of the fees), and the "allegations largely consist[ed] of general conclusions, not facts." *Id.* at 13-14, Ex. C to the Lin Decl.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 33

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

1    standard). Plaintiff's Complaint contains allegations that are substantially similar to those in the

2    complaints in the fourteen most recent §36(b) cases cited in this section that have been upheld

3    both before and after *Twombly*, *Iqbal*, and *Jones*. The Court should likewise uphold the

4    Complaint here as the allegations, as a whole, present a plausible claim that the fees charged by

5    Defendants in this case are disproportionately large.

6    **E.    Plaintiff Has Standing To Assert Claims on Behalf of Shareholders in All Share
            Classes of the Fund**

7            The ICA "'must be broadly construed in order to insure the investing public a full

8    measure of protection.'"  *Sivolla v. AXA Equitable Life Ins. Co.*, No. 11-4194, 2012 WL

9    4464040, at *4 (D. N.J. Sept. 25, 2012) (citation omitted).  Section 36(b) provides that "[a]n

10   action may be brought under this subsection . . . by a security holder of such registered

11   investment company on behalf of such company."  15 U.S.C. § 80a-35(b). While Defendants

12   make much of the fact that Plaintiff owns class A shares of the Fund, §36(b) does not distinguish

13   amongst owners of different share classes. As the court in *Curran* explained, "[w]hen a single

14   mutual fund issues different classes of shares, that is, shares that offer varying fee and expense

15   structures, each shareholder, regardless of the class of shares that shareholder owns, unarguably

16   holds security in that mutual fund."  2010 WL 2889752 at n.6 (citation omitted).  Further, the

17   plain language of §36(b) "does not distinguish among owners of different classes of shares in a

18   mutual fund, and does not impose any requirement at the share class level."  *Am. Mutual*, 2009

19   WL 5215755, at *42; *see also Turner*, Slip. Op. at 8, attached as Ex. C to the Lin Decl. Further,

20   the fact that shareholders in different share classes may be assessed different fees is not sufficient

21   to preclude Plaintiff from proceeding on behalf of all shareholders of the Fund. *Am. Mutual*,

22   2009 WL 5215755 at *42.  This is especially true here where the fees of all shareholders are

23   purportedly supporting the investment management services, the construction of PIMCO's new

24   headquarters, and the provision of shareholder services such as the preparation of various reports

25   which are provided to all of the Fund's shareholders.

26

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 34

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

A plaintiff has Article III standing to bring an ICA claim against an investment adviser "where she plausibly alleges that (1) she has suffered an injury in fact traceable to a defendant and redressable by the court, and (2) her claimed injury is shared in common with others who have been similarly harmed by the same defendant's actions." *In re Mutual Funds Inv. Litig.*, 519 F. Supp. 2d 580, 586 (D. Md. 2007); *see also In re Scudder Mutual Funds Fee Litig.*, No. 04-1921, 2007 WL 2325862, at *8-9 (S.D.N.Y. Aug. 14, 2007) (discussing Article III standing requirement in the 36(b) context). The question, therefore, is "whether the named plaintiffs have claimed injury they share in common with others who have been similarly harmed by the same defendant's actions." *In re Mutual Funds Inv. Litig.*, 519 F. Supp. 2d at 586-7. The focus is "whether a defendant's allegedly illegal conduct caused the same type of harm to the plaintiff and all the others on whose behalf he is asserting claims." *Id.* at 587.

In this case, Plaintiff actually bears the costs of the fees about which he is complaining except for the 12b-1 *distribution* fees which has been held to be of no moment.[22]  This was the exact situation in *Turner*, where, as here, the plaintiff owned class A shares that did not pay a distribution fee but did pay 12b-1 servicing fees. Following the rationale in *Am. Mutual*, the *Turner* court held that ownership in any one share class was sufficient to confer statutory standing. Slip. Op. at 8. The court further held that such ownership was enough to satisfy the injury requirement of Article III:

> Because each share class participates in the same portfolio of assets, excessive fees charged to one class will detract from the overall pool and affect the value of other classes ". . .The different share classes in a particular Fund invest in the same portfolio of assets, receive the same types and levels of service, and are managed in the same manner. The fact that different share classes are assessed different fees and/or fee levels is not sufficient to preclude Plaintiffs from proceeding on behalf of all shareholders of the funds at issue."

*Id.* at 8-9 (quoting *Am. Mutual*, 2009 WL 5215755, at *42).

---

[22] Defendants' reliance on *Kasilag* is misplaced as the plaintiff there did not pay the fee at issue where Plaintiff here pays investment advisory, administrative, and distribution servicing fees.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

Here, both named Plaintiff and other shareholders in the Fund have suffered an injury in fact traceable to Defendants that is redressable by the Court. As the fees charged reduce the investment returns of all shareholders, Plaintiff clearly has standing to complain about Defendants' breaches of fiduciary duty in the way those fees are being extracted.

**F.     Defendants Prematurely Challenge Plaintiff's Requests for Rescission and a Jury Trial**

Defendants also prematurely raise two issues which are not within the proper scope of a motion to dismiss. First, Defendants assert that rescission is an inappropriate remedy for a §36(b) claim. Defs.' Mot. at 36. As the court in *Goodman* recently held, "[the] [c]ourt need not decide at this juncture whether rescission under § 47(b) falls within the scope of available remedies because a Rule 12(b)(6) motion properly targets claims, not remedies." 2015 WL 965665, at *6. Further, Defendants' sole cite in support of their argument is to dicta in one case which relies upon another case where the plaintiff did not bring the case derivatively, as Plaintiff here has. Second, Defendants appear to raise a motion to strike Plaintiff's request for a jury trial in a footnote. *See* Defs.' Mot. at 36 n.20. This is not a proper request to strike. The question of whether a jury trial is available for §36(b) cases also falls outside the Rule 12(b)(6) inquiry. Plaintiff reserves his right to submit a brief on these two issue should the Court request one or Plaintiff will respond to the issues once properly presented.

### IV. CONCLUSION

Plaintiff's allegations taken as a whole put Defendants on fair notice of the claims and their grounds and more than plausibly demonstrate that Defendants have breached their fiduciary duty to the Fund by charging excessive fees in violation of § 36(b) of the ICA. Accordingly, the Court should deny Defendants' motion to dismiss. Should the Court believe additional facts are necessary, Plaintiff requests leave to amend his Complaint.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 36

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

DATED this 20th day of April, 2015.

KELLER ROHRBACK L.L.P.

By: s/ Michael D. Woerner
By: s/ Tana Lin
By: s/ Laura R. Gerber
By: s/ Ian Mensher

Michael D. Woerner, WSBA #15452
Tana Lin, WSBA #35271
Laura R. Gerber, WSBA #34981
Ian Mensher, WSBA #39593
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Tel: (206) 623-1900
Fax: (206) 623-3384
Email: mwoerner@kellerrohrback.com
        tlin@kellerrohrback.com
        lgerber@kellerrohrback.com
        imensher@kellerrohrback.com

James C. Bradley (Admitted *pro hac vice)*
jbradley@rpwb.com
Nina Fields Britt (Admitted *pro hac vice)*
nfields@rpwb.com
Matthew A. Nickles (Admitted *pro hac vice)*
mnickles@rpwb.com
Richardson, Patrick, Westbrook &
Brickman, LLC
1017 Chuck Dawley Blvd.
Post Office Box 1007
Mount Pleasant, SC  29465
Tel: (843) 727-6500
Fax: (843) 881-6183

Michael Brickman (Admitted *pro hac vice)*
mbrickman@rpwb.com
Richardson, Patrick, Westbrook &
Brickman, LLC
174 East Bay Street
P.O. Box 879
Charleston, SC  29401
Tel: (843) 727-6520
Fax: (843) 727-3103

*Attorneys for Plaintiff Robert Kenny*

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 37

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses registered, as denoted on the attached list, and I hereby certify that I have caused to be mailed the foregoing document or paper via the United States Postal Service to non CM/ECF participants on the list below:

Ronald L Berenstain    rberenstain@perkinscoie.com, docketsea@perkinscoie.com, jstarr@perkinscoie.com

Michael Woerner    mwoerner@KellerRohrback.com, dwilcher@kellerrohrback.com

David F Taylor    DFTaylor@perkinscoie.com, docketsea@perkinscoie.com, kstokes@perkinscoie.com

Robert A Skinner    rskinner@ropesgray.com

Tana Lin    tlin@kellerrohrback.com, chopkins@kellerrohrback.com, ldouglas@kellerrohrback.com

Laura R Gerber    lgerber@kellerrohrback.com, sdouglas@kellerrohrback.com

Sean C Knowles    sknowles@perkinscoie.com, docketsea@perkinscoie.com, kstokes@perkinscoie.com

Ian J. Mensher    imensher@kellerrohrback.com

Michael J Brickman    mbrickman@rpwb.com

Nina Fields Britt    nfields@rpwb.com

James C Bradley    jbradley@rpwb.com

Matthew A Nickles    mnickles@rpwb.com

John D Donovan, Jr    John.Donovan@ropesgray.com

John C Ertman    John.Ertman@ropesgray.com

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 1

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC**
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183

Amy D Roy     Amy.Roy@ropesgray.com

/s/ Michael D. Woerner
          Michael D. Woerner, WSBA #15452

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(2:14-cv-01987-RSM) - 2

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC
1017 Chuck Dawley Blvd.
Mount Pleasant, South Carolina 29464
TELEPHONE: (843) 727-6500
FACSIMILE: (843) 881-6183