1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT KENNY , <br><br> Plaintiff, <br><br> v. <br><br> PACIFIC INVESTMENT MANAGEMENT COMPANY LLC, a Delaware limited liability company; PIMCO INVESTMENTS LLC, <br><br> Defendants. | Case No. C14-1987RSM <br><br> ORDER DENYING DEFENDANTS' MOTION TO DISMISS |

## I.        INTRODUCTION

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff Robert Kenny's Complaint.   Dkt. #28.   Mr. Kenny alleges that Defendants Pacific Investment Management Company LLC ("PIMCO") and PIMCO Investments LLC ("PIMCO Investments") have breached their fiduciary duty to him and other shareholders by charging excessive fees associated with investments in Defendants' financial products.   *See* Dkt. # 1. Defendants argue that this matter should be dismissed under Rule 12(b)(6) because Plaintiff's Complaint fails for an "absence of specifics," and because the fees charged by Defendants are not plausibly excessive.   Dkt #28 at 8-9.   Defendants also argue that Plaintiff lacks standing to challenge fees that do not apply to him personally.   *Id.* at 9.   In opposition, Plaintiff argues that

Defendants are raising "factual disputes that the Court cannot resolve on the pleadings," demanding that Plaintiff "prove his claims rather than plead them," and turning "Rule 12(b)(6) on its head by resolving disputed facts in [Defendants'] favor and drawing inferences against Plaintiff." Dkt. #38 at 8. For the reasons set forth below, the Court agrees with Plaintiff and DENIES Defendants' Motion.

## II.     BACKGROUND[1]

Plaintiff Robert Kenny is a shareholder of the PIMCO Total Return Fund, a mutual fund run and distributed by Defendants. Dkt. #1 at 4. Mr. Kenny began investing in this fund in 2011. *Id.* at 5.

The parties agree that the Total Return Fund was, until recently, the world' largest mutual fund. *See Id.* at 6, Dkt. #28 at 7. Plaintiff alleges the Fund held over $230 billion in assets under management as of March 31, 2014. Dkt. #1 at 6. The Total Return Fund was created by William H. Gross, PIMCO's founder and former chief investment officer, in May 1987. *Id.* at 15. Since then, the assets of the fund have grown substantially. However, Plaintiff alleges that the Total Return Fund performance has suffered by "fail[ing] to outperform its benchmark" and being outperformed by 60% of the Fund's peers in 2012, and losing 1.92% and trailing 70% of its peers in 2013." *Id.* at 16. Plaintiff alleges that in calendar year 2013, "shareholders in Class A of the Fund saw returns of -5.97% before taxes, while shareholders of Class B shares saw returns of -6.36% before taxes." *Id.* Defendants argue that the Fund has performed well in previous years, but acknowledge that the Total Return Fund's performance in 2013-14 lagged its historical performance. Dkt. #28 at 12. Plaintiff alleges that the Fund's poor performance has "shaken up management at PIMCO," and pleads details of Mr. Gross' exit from PIMCO. Dkt. #1 at 16.

---

[1] The following background is taken from Plaintiff's Complaint and Defendants' Motion. Dkt. ##1 and 28.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 2

Plaintiff alleges that, despite this downturn in the performance of the Total Return Fund, "the compensation PIMCO has received for its work for the Fund… has remained extraordinary and has led to shocking payments to its executives." *Id.* at 17.

Plaintiff alleges that Defendants have breached their fiduciary duty owed to the shareholders of the Total Return Fund pursuant to Section 36(b) of the Investment Company Act ("ICA") by charging the Fund excessive fees in four instances: Investment Advisor Fees, Supervisory and Administrative Fees, Distribution Fees,[2] and Servicing Fees. *Id.* at 18-27. For the first two fees alone, PIMCO is alleged to have collected from the Total Return Fund $1,249,368,137 in 2013. *Id.* at 23. For the second two fees, PIMCO is alleged to have collected from the Total Return Fund $297,406,290 in 2013. *Id.* at 26. Plaintiff alleges that several financial analysts have "criticiz[ed] the size of PIMCO's fees for the [Total Return] Fund…" *Id.* at 23; *see also id.* at 24-25. Defendants present evidence of other financial articles having contrary opinions of the performance of the Total Return Fund, and evidence comparing the fees charged by the Fund against other mutual funds. Dkt. #28 at 12-13 and n.3 at 16.

Plaintiff alleges that, although the Total Return Fund has grown substantially in size, the fees have grown proportionally, "reflecting a failure to pass on economies of scale to the Fund." *Id.* at 27. Plaintiff alleges that the work required to operate a mutual fund does not increase proportionately with the assets under management, therefore as scale increases, fees as a percentage of assets ought to decline. *Id.* at 27-28. Plaintiff provides specific details of how the economies of scale should work with regard to each of the four fees. *See id.* at 34-36.

Plaintiff alleges that the fees charged to the shareholders of the Total Return Fund are excessive when compared to other PIMCO clients, including private individual investors and

---

[2] Plaintiff alleges that, instead of being charged a distribution fee, Class A shareholders (like Plaintiff) are charged an upfront sales charge or "load fee." Dkt. #1 at 21-22.

shareholders of two other funds. *See id.* at 36-42.   These allegations include specific breakdowns of fee percentages and "breakpoints" where increased investment with PIMCO results in lower fee percentages for private investors. *See id.*  Plaintiff alleges that Mr. Gross, when asked in an interview what the difference was between another PIMCO fund and the Total Return Fund, responded "[t]here's not much difference at all, other than size and fees." *Id.* at 40.

Plaintiff alleges that the quality of service provided by PIMCO to shareholders of the Total Return Fund, including Plaintiff, has been poor. *Id.* at 44.  Plaintiff provides ten specific examples, including, *inter alia*: "PIMCO failed to synchronize account value information and daily net asset value for the Fund on PIMCO's website;" "Plaintiff has been unable to access his account due to server problems at PIMCO at least 8 separate times in the past 12 months;" "PIMCO has routinely failed to process Plaintiff's transaction requests in a timely manner;" and approximately 16 customer service phone calls with PIMCO, including a call where a PIMCO representative allegedly told Plaintiff, "I don't blame you for not trusting that PIMCO is handling any transactions, including earnings, correctly." *Id.* at 44-46.

Plaintiff's Complaint provides lengthy and detailed allegations that the management structure and high compensation of the PIMCO Board has led to a lack of independence and conscientiousness and thus this breach of fiduciary duty. *See id.* at 50-57.

On December 31, 2014, Plaintiff filed his Complaint on behalf of the PIMCO Total Return Fund pursuant to 15 U.S.C. § 80a-35(b).  Dkt. #1 at 5.  Defendants now move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## III.   DISCUSSION

**A. Legal Standard**

In making a Rule 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, Plaintiff's claims must be dismissed. *Id*. at 570.

**B.  Consideration of Documents Outside the Complaint**

"Generally, on a 12(b)(6) motion, the District Court should consider only the pleadings." *Shaver v. Operating Engineers Local 428 Pension Trust Fund*, 332 F.3d 1198, 1201 (9th Cir. 2003). The Court, however, "may also consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Northstar Fin. Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1043 (9th Cir. 2015) (alteration in original) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)). Courts sometimes refer to this as the doctrine of "incorporation by reference." *Id.*

Additionally, when considering a motion to dismiss, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Federal Rule of Evidence 201 permits the court to "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.  Consistent with that rule, the Court may take judicial notice of undisputed matters of public record, such as documents on file in federal or state courts.  *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (taking judicial notice of state court proceedings in *res judicata* analysis); *Lee v. Thornburg Mortg. Home Loans Inc.*, No. 14-cv-00602 NC, 2014 U.S. Dist. LEXIS 137758, 2014 WL 4953966 (N.D. Cal. Sept. 29, 2014) (taking judicial notice of court filings and public records in evaluating whether *res judicata* barred *pro se* plaintiff's third attempt to litigate home foreclosure).

Defendants and Plaintiff each submit requests for judicial notice of certain documents outside the Complaint.  Dkt. ## 30 and 40.  The documents submitted by the parties fall into four categories: public documents filed with the Securities and Exchange Commission, publicly available rankings and reports published by Morningstar, industry articles quoted in the Complaint, and the Plaintiff's 2014 year-end account statement reflecting his holdings in the Total Return Fund.  Dkt. #3 at 3.  All of these documents are relied on in some fashion by the Complaint.  The filings with the SEC are matters of public record.  Neither party opposed the authenticity or relevance of any of these documents.  The Court will take judicial notice of these documents, except for Plaintiff's 2014 account statement, Dkt. #29-1 at 174-175.  The majority of the content of this account statement is not alleged in the Complaint, nor is it a

matter of public record—indeed it was sealed by the Court to protect Plaintiff's privacy.  *See* Dkt. #37.  Regardless, the parties appear to agree that Plaintiff owns solely Class A shares in the Fund.  *See* Dkt. #28 at 9; Dkt. #38 at 42.

### C. Plaintiff's Breach of Fiduciary Duty by Excessive Investment Advisory and Supervisory/Administrative Fees Claim

"To face liability under § 36(b), an investment adviser must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's/length bargaining." *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 346 (2010).  Courts look to all relevant factors to determine if a fee meets this standard, including the factual inquiries known as the "*Gartenberg* factors." *See Jones*, 559 U.S. at 344 (citing *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 929 (2d Cir. 1982)). The *Gartenberg* factors include: (1) the nature and quality of the services provided; (2) comparative fees; (3) economies of scale; (4) fall-out benefits (*i.e.*, indirect profits to the adviser attributable in some way to the existence of the fund); (5) the profitability of the adviser in providing services to the fund; and (6) the independence and conscientiousness of the directors. *Id.* at 344 & n.5.  A plaintiff "need not address all of the *Gartenberg* factors to survive a motion to dismiss if, when taken as a whole, the complaint demonstrates a plausible claim for relief under § 36(b)." *In re Blackrock Mut. Funds Advisory Fee Litig.*, 2015 WL 1418848 at *4 (D.N.J. Mar. 27, 2015) (citations omitted).  Instead, a plaintiff "'may state a §36(b) claim by alleging any combination of facts that plausibly support an inference that a particular fee, given all of the surrounding facts and circumstances, is disproportionately large to the services rendered in exchange for that fee.'" *Id.* (citations omitted).

Defendants argue that Plaintiff has failed to meet the 12(b)(6) standard for this claim because Plaintiff's claim is not plausible, is conclusory, and fails to support a claim that the

fees are so disproportionately large relative to the services provided that they are outside of what could have been bargained at arm's length. Dkt. #28 at 20.  Defendants appear to propose that Plaintiff must *prove* the fees are beyond the range of arm's length bargaining, relying on language from *Jones*. Dkt. #28 at 8 ("As [*Jones*] has said, a plaintiff alleging excessive mutual fund fees is not automatically entitled to a trial on his claim…. he must show… fees are *beyond* the range of arm's length bargaining.")  However, it is clear from reading the first paragraph of *Jones* that the Court was not contemplating the 12(b)(6) standard for dismissal—the *Gartenberg* factors were reviewed by the lower court on a motion for summary judgment, not a motion to dismiss for failure to state a claim.  *Jones*, 559 U.S. at 335.  Defendants argue that "while the plaintiff need not produce evidence at this stage, he must allege particularized facts that would plausibly support a finding. The Complaint is hopelessly devoid of the necessary specifics."  Dkt. #28 at 9.  Throughout their Motion, Defendants grossly exaggerate "the specifics" needed to survive a 12(b)(6) motion, essentially calling for Plaintiff to prove his case now, before discovery.  Furthermore, Defendants repeatedly appear to ask the Court to review the plausibility of *each* of Plaintiff's factual allegations in isolation—not the plausibility of Plaintiff's two causes of action taking all factual allegations as true.  The Court declines to deviate from the established standards for a 12(b)(6) Motion.

Plaintiff has successfully pled several of the *Gartenberg* factors.  Plaintiff starts by alleging that a substantial fee disparity exists between the fees charged shareholders of the Total Return Fund and fees charged private individual investors and shareholders of two other PIMCO funds.  *See* Dkt. #1 at 36-42.  PIMCO allegedly performs substantially the same services for these different Funds and investors, raising a plausible inference that PIMCO's fees are excessive.  Whether or not the services are the same is a question of fact not addressed at

1
2

this juncture.   Accordingly, Plaintiff's allegations can plausibly satisfy the comparative fee structure factor of *Gartenberg*.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff has also alleged that PIMCO received "economies of scale" benefits, providing significant detail.  *See* Dkt. # 1 at 27-28; 34-36.  Plaintiff alleges that the Total Return Fund shareholders did not receive breakpoints, while private individual investors did.  *See id.* at 36-42.  Courts have found similar allegations to sufficiently indicate that the adviser-defendant has received economies of scale not shared with the mutual fund.  *See, e.g., Kasilag v. Hartford Investment Financial Services, LLC*, No. 11-civ-1083, 2012 WL 6568409 (D.N.J. Dec. 17, 2012) (denying in part a motion to dismiss and holding that plaintiffs "sufficiently alleged that [defendant's] breakpoints did not give shareholders meaningful benefits from the economies of scale enjoyed by the Funds"); *Zehrer v. Harbor Capital Advisors, Inc.*, 2014 U.S. Dist. LEXIS 162060 at *11, Fed. Sec. L. Rep. (CCH) P98, 301 (N.D. Ill. Nov. 18, 2014) (finding allegations that "Harbor Capital received 'economies of scale' benefits as the Fund grew that were not passed on to the Fund" sufficient at 12(b)(6) stage); *Reso ex rel. Artisan Int'l Fund v. Artisan Partners Ltd. P'ship*, 2011 U.S. Dist. LEXIS 133526, *25, 2011 WL 5826034 (E.D. Wis. Nov. 18, 2011) (stating that plaintiff's "strongest allegations relate to the economies of scale factor" where plaintiff alleged facts that defendant's fee was "reduced only slightly over the course of amassing a large amount of assets, but that [defendant] does not suffer significant additional expenditures over the course of that expansion"); *Curran ex rel. Principal Funds, Inc. v. Principal Mgmt. Corp., LLC*, 2010 U.S. Dist. LEXIS 83730, *33, 2010 WL 2889752 (S.D. Iowa June 8, 2010) (finding that the plaintiffs had adequately pled the "economies of scale" factor where breakpoints to the fees were "immaterial"); *Sins v. Janus Capital Mgmt., LLC*, 2006 U.S. Dist. LEXIS 90673, *11 (D. Colo. Dec. 15, 2006) (explaining that where the

plaintiff alleged that an increase in fund assets and lack of breakpoint levels could show disproportionality, the "economies of scale" factor was adequately pled). Plaintiff need not establish whether PIMCO actually failed to pass along economies of scale at this stage of the proceedings; rather, Plaintiff need only allege sufficient factual content to draw a reasonable inference that PIMCO failed to do so. Here, it is possible to infer from the allegations in the Complaint that the Total Return Fund's growth into the largest mutual fund in the world was not matched by a proportional decrease in fees and that the absence of breakpoints in the fee schedule demonstrates that savings from the economies of scale were not being passed through to the shareholders, including Plaintiff. Therefore, the Court finds that Plaintiff's allegations can plausibly satisfy this factor of *Gartenberg*.

Plaintiff also pleads, with significant detail, that the nature and quality of the service provided by PIMCO is poor. Dkt. #1 at 44-46. Whether or not these allegations are true is a question of fact not before the Court at this juncture. The Court finds that Plaintiff's allegations can plausibly satisfy this factor of *Gartenberg*.

Plaintiff provides some detail as to the profitability and fall-out benefit *Gartenberg* factors. *See* Dkt. #1 at 47-50. These claims, accepted as true, may be insufficient to satisfy the test set forth in *Gartenberg*. Regardless, Plaintiff "need not address all of the *Gartenberg* factors to survive a motion to dismiss if, when taken as a whole, the complaint demonstrates a plausible claim for relief under § 36(b)." *In re Blackrock*, 2015 WL 1418848 at *4 (citations omitted).

Plaintiff's Complaint discusses, at great length, his allegations that the management structure and high compensation of the PIMCO Board has led to this breach of fiduciary duty. *See* Dkt. #1 at 50-57. Again, whether or not these allegations are true is a question of fact not

before the Court.  The Court finds that Plaintiff's allegations can plausibly satisfy this factor of *Gartenberg*.

In sum, the Court finds that Plaintiff has pled sufficient facts about the advisory and supervisory/administrative fees paid to PIMCO, and their relationship to the services rendered, to present a plausible claim that the fees are disproportionately large and not the product of arm's length negotiations.  In so ruling, the Court does not hold that Defendants' arguments lack merit, or that the Court finds it likely that Plaintiff will be able to meet the standard for liability under Section 36(b). At this stage of the proceedings, however, the Court's duty is not to challenge or otherwise test the strength of the allegations within the Complaint.

**D. Plaintiff's Breach of Fiduciary Duty by Excessive Rule 12b-1 Distribution Fees and Extraction of Additional Compensation for Advisory Services Claim**

Plaintiff's second claim, for excessive Rule 12b-1 Distribution fees, incorporates the facts and analysis stated in paragraphs 1 through 164 of the Complaint. Dkt. #1 at 59.  Plaintiff pleads that PIMCO's distribution and servicing fees have been criticized by Morningstar as "not competitive." Dkt. #1 at 27.  Drawing all inferences in favor of the non-moving party, this is evidence of the "comparative fees" *Gartenberg* factor.   Plaintiff also alleges that the distribution and servicing fees "were designed to, and did, extract additional compensation for Defendant PIMCO Investment LLC's advisory services in violation of… Section 36(b)." Dkt. #1 at 60.  Plaintiff appears to be arguing that these fees are duplicative—that no additional service is being provided for these fees above the advisory services for which a fee is already charged.   Although this paragraph is not as clear as the Court would prefer, drawing all inferences in favor of Plaintiff, this is evidence of the "nature and quality of the services provided" *Gartenberg* factor.

Plaintiff also alleges that Defendants failed to pass on economies of scale in setting the distribution and servicing fees. *Id.* Specific facts pled include: "the distribution and servicing fee rates for the Fund have not been reduced in the past 10 years;" "the distribution fees are based on the net asset value of the Fund and not on the distribution activity;" and that the net distribution and service fees charged has tripled from 2003 to 2013 along with the net assets of the Fund. Dkt. #1 at 26-27. This is evidence of the "economies of scale" *Gartenberg* factor.

As Defendants note, "the standard for establishing 'excessive' distribution and servicing (12b-1) fees is the same as for advisory and administrative fees…" Dkt. #28 at 37. Defendants cite to several cases where 12b-1 fee claims were dismissed because, *e.g.*, "plaintiffs failed to allege the 'fundamental claim' that 'the distribution fees are disproportionate and unrelated to the sales-related services actually provided.'" Dkt. #41 at 21 (citing *ING Principal Prot. Funds Deriv. Litig.*, 369 F. Supp. 2d 163, 169 (D. Mass. 2005)); *see also* Dkt. ##28 at 37.

Although Plaintiff's pleading is thin as to this claim—relying most heavily on the economies of scale *Gartenberg* factor—The Court finds that Plaintiff has pled sufficient facts about the distribution and servicing fees paid to PIMCO, and their relationship to the services rendered, to present a plausible claim that the fees are disproportionately large and not the product of arm's length negotiations.

**E. Plaintiff's Standing for Fees set on Share Classes other than Class A**

A plaintiff has Article III standing to bring an ICA claim against an investment adviser "where she plausibly alleges that (1) she has suffered an injury in fact traceable to a defendant and redressable by the court, and (2) her claimed injury is shared in common with others who have been similarly harmed by the same defendant's actions." *In re Mutual Funds Inv. Litig.*, 519 F. Supp. 2d 580, 586 (D. Md. 2007); *see also In re Scudder Mutual Funds Fee Litig.*, No.

04-1921, 2007 WL 2325862, at *8-9 (S.D.N.Y. Aug. 14, 2007) (discussing Article III standing requirement in the 36(b) context).  *Curran* states, "[w]hen a single mutual fund issues different classes of shares, that is, shares that offer varying fee and expense structures, each shareholder, regardless of the class of shares that shareholder owns, unarguably holds security in that mutual fund."  2010 WL 2889752 at n.6 (citation omitted).  The fact that shareholders in different share classes may be assessed different fees is not sufficient to preclude a plaintiff from proceeding on behalf of all shareholders of the Fund.  *In re Am. Mut. Funds Fee Litig*., 2009 WL 5215755, at *42 (C.D. Cal. Dec. 28, 2009) *aff'd sub nom. Jelinek v. Capital Research & Mgmt. Co.*, 448 F. App'x 716 (9th Cir. 2011) (citing 15 U.S.C. § 80a–35(b)).

Defendants argue, without citation, that "the law limits standing to a plaintiff who fairly represents the interests of similarly situated shareholders."  Dkt. #28 at 39.  Defendants argue, without citation, that "[i]n a derivative action, the plaintiff's role is to act for similarly situated shareholders and vigorously press their alleged claims."  *Id.* at 40.  Defendants appear to argue that this law is inherent, arguing that "it stems from the nature of representative litigation."  *Id.* Defendants then erroneously point to Rule 23.1, entitled "Derivative Actions."  Rule 23.1 states that the Plaintiff must "fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association."  Fed. R. Civ. P. 23.1.  While this would appear to be *directly* on point, the rule only applies "when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that *the corporation or association* may properly assert but has failed to enforce."  *Id.* (emphasis added).  However, Plaintiff brings this action under §36(b) of the ICA, and "as the language of § 36(b) indicates, Congress intended the fiduciary duty imposed on investment advisers by that statute to be enforced solely by security holders of

the investment company and the SEC." *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 542

(1984).  As Plaintiff points out in his Complaint, the Supreme Court has specifically held that

Federal Rule 23.1 does not apply to claims under §36(b).  Dkt. #1 at 5 (citing *Daily Income

Fund*, 464 U.S. at 542 (1984) (holding "Rule 23.1 does not apply to an action brought by a

shareholder under § 36(b) of the Investment Company Act")).  Defendants fail to acknowledge

this adverse law.

Defendants also point to *Kasilag, supra.*  This case is on point—the plaintiff in that case

owned only Class A shares and brought a derivative action under §36(b) of the ICA for

excessive 12b-1 fees when Class A shares were not charged that fee.  *Id.*  The district court in

that matter found that "the record is devoid of any allegations suggesting that Plaintiffs had a

personal stake "regarding distribution fees on shares they do not own."  *Kasilag*, 2012 WL

6568409 at *9.

Plaintiff responds by pointing to *In re Am. Mut. Funds Fee Litig.*, *supra,* and submits to

the Court a slip opinion, *Turner v. Davis Select Advisers LP*; No. 08-421, Slip. Op. (D. Ariz.

June 1, 2011), which holds that ownership in any one share class is sufficient to confer

statutory standing under §36(b) *and* the injury requirement of Article III standing "[b]ecause

each share class participates in the same portfolio of assets [and] excessive fees charged to one

class will detract from the overall pool and affect the value of other classes…" Dkt. #39-3 at 9.

The Court, in thoroughly reviewing the record, finds that Plaintiff has pled allegations

sufficient to show statutory and Article III standing for all of his claims.  Plaintiff's allegations

that the fees charged by Defendants against the Total Return Fund are excessive, meet the

requirements of §36(b), and are sufficient to show plausible injury to Plaintiff.  This applies

even to fees that are not directly charged to Plaintiff's Class A shares because it is plausible,

although not proven, that such fees may injure the Fund as a whole and thus inherently injure Plaintiff as a shareholder.

**F.   Request for Rescission of Contracts**

In addition to damages, Plaintiff seeks contract rescission as a relief provided pursuant to §47(b) of the ICA, 15 U.S.C. §80-46(b).  Dkt. #1 at 59-60.

Defendants move to dismiss this relief, arguing that Plaintiff lacks standing as he is not a party to the contracts in question.  Defendants cite to *Davis v. Bailey*, No. 05-civ-00042, 2005 WL 3527286, at *6 (D. Colo. Dec. 22, 2005), where the Court stated in *dicta* that the plaintiff could not seek this relief.

Plaintiff argues that "[the] [c]ourt need not decide at this juncture whether rescission under § 47(b) falls within the scope of available remedies because a Rule 12(b)(6) motion properly targets claims, not remedies," citing to *Goodman v. J.P. Morgan Invest. Mgmt., Inc.*, No. 2:14-CV-414, 2015 WL 965665, at *6 (S.D. Ohio Mar. 4, 2015).  Defendants do not address this issue in Reply.

Having found that Plaintiff may proceed with his claims, the Court finds that the record is insufficient at this early stage to determine whether Plaintiff has standing to seek this relief, and that this issue may be properly raised at summary judgment.

**IV.   CONCLUSION**

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

1)  Defendants' Request for Judicial Notice (Dkt. #30), is GRANTED IN PART AND DENIED IN PART, as set forth above.

2)  Plaintiff's Motion Requesting Judicial Notice (Dkt. #40) is GRANTED.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 15

3)  Defendants' Motion to Dismiss (Dkt. #28) is DENIED as set forth above.

DATED this 26 day of August, 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 16