THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT KENNY,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC INVESTMENT MANAGEMENT COMAPNY LLC; PIMCO INVESTMENTS LLC,<br><br>Defendant. | No. 2:14-cv-01987-RSM<br><br>NON-PARTY INDEPENDENT TRUSTEES OF PIMCO FUNDS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF PRIVILEGED COMMUNICATIONS<br><br>NOTED ON MOTION CALENDAR: October 7, 2016<br><br>ORAL ARGUMENT REQUESTED |



Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 2

I. THE INDEPENDENT TRUSTEES AND THEIR INDEPENDENT COUNSEL ..... 2

II. PLAINTIFF'S SUBPOENAS TO THE INDEPENDENT TRUSTEES ..... 3

ARGUMENT ..... 4

I. THE COMMUNICATIONS AT ISSUE INDISPUTABLY ARE PRIVILEGED ..... 5

II. THE INDEPENDENT TRUSTEES' PRIVILEGED COMMUNICATIONS SHOULD REMAIN PROTECTED FROM DISCLOSURE ..... 5

A. Application Of The "Fiduciary Exception" Against the Independent Trustees Is Wholly Incompatible With The Legal Framework Governing Mutual Funds ..... 5

B. The "Fiduciary Exception" Recognized In ERISA Or Common-Law Trust Disputes Does Not Eliminate the Privilege Between Mutual Fund Independent Trustees And Their Independent Counsel ..... 8

1. Massachusetts Business Trusts, Such As PIMCO Funds, Are Critically Different From ERISA Trusts ..... 9

2. Massachusetts Business Trusts Are Also Critically Distinguishable From Common-Law Trusts ..... 10

3. The Rationale For Permitting The "Fiduciary Exception" In ERISA Or Common-Law Trusts Is Entirely Inapplicable To Independent Trustees Of Mutual Funds ..... 11

CONCLUSION ..... 12




Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Mut. Funds Fee Litig.*, 2009 WL 5215755 (C.D. Cal. Dec. 28, 2009) ....................7

*Burks v. Lasker*, 441 U.S. 471 (1979) ....................6

*Chandola v. Seattle Housing Auth.*, 2014 WL 4685351 (W.D. Wash. Sept. 19, 2014) ....................5

*Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970) ....................12

*Gartenberg v. Merrill Lynch Asset Mgmt, Inc.*, 694 F.2d 923 (2d Cir. 1982) ....................7

*In re Grand Jury Investigation*, 974 F.2d 1068 (9th Cir. 1992) ....................5

*Hecht v. Malley*, 265 U.S. 144 (1924) ....................10

*Hunt v. Blackburn*, 128 U.S. 464 (1888) ....................7

*Jones v. Harris Assocs. L.P.*, 559 U.S. 335 (2010) ....................6

*Patterson v. Shumate*, 504 U.S. 753 (1992) ....................10

*Richardson v. Clarke*, 372 Mass. 859 (1977) ....................9

*Schuyt v. Rowe Price Prime Reserve Fund, Inc.*, 663 F. Supp. 962 (S.D.N.Y. 1987) ....................7

*Sivolella v. AXA Equitable Life Ins. Co.*, No. 11-cv-4194 (D.N.J. Aug. 25, 2016) ....................7

*State St. Trust Co. v. Hall*, 311 Mass. 299 (Mass. 1942) ....................10



Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*Swidler & Berlin v. United States*, 524 U.S. 399 (1998) ....... 6

*Tibble v. Edison Int'l*, 135 S. Ct. 1823 (2015) ....... 9

*United States v. Evans*, 796 F.2d 264 (9th Cir. 1986) ....... 12

*United States v. Jicarilla*, 564 U.S. 162 (2011) ....... 11

*United States v. Mett*, 178 F.3d 1058 (9th Cir. 1999) ....... *passim*

*United States v. Ruehle*, 583 F.3d 600 (9th Cir. 2009) ....... 5

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) ....... 7

*Weil v. Inv./Indicators Research & Mgmt.*, 647 F.2d 18 (9th Cir. 1981) ....... 12

**Statutes**

15 U.S.C. §80a-2 ....... 6

15 U.S.C. §80a-10 ....... 6

15 U.S.C. §80a-15(c) ....... 2

15 U.S.C. §80a-29(e) ....... 11

29 U.S.C. §1056(d)(1) ....... 10

15 U.S.C. §80a-35(b) ....... 8

Mass. Gen. Laws ch. 182, §1 ....... 10

Mass. Gen. Laws ch. 156D, §§ 1.40, 9.50, 11.02 ....... 10

**Other Authorities**

17 C.F.R. §270.0-1(a)(6)(i)(A) ....... 3

17 C.F.R. §270.30b1-5 ....... 11

Fed. R. Civ. P. 26(b)(5)(A)(ii) ....... -5



Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax



*Modern Status of the Massachusetts or Business Trust*, 88 A.L.R.3d 704 (1978) ........................10



Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

## PRELIMINARY STATEMENT

Plaintiff Robert Kenny's ("Plaintiff's") Motion to Compel (the "Motion" or "Mot.") asks this Court for an unprecedented order requiring the non-party Independent Trustees to the PIMCO Funds to disclose all privileged communications between or among them and their independent legal counsel. Plaintiff candidly admits that the communications at issue meet the traditional elements of the attorney-client privilege because they indisputably are both confidential and made for the purpose of requesting or receiving legal advice in connection with the Independent Trustees' service to the PIMCO Funds. Despite this concession, Plaintiff claims that the Independent Trustees—who have properly asserted their privilege—are not entitled to rely on it for the sole reason that they are the trustees of PIMCO Funds, which is organized as a Massachusetts Business Trust ("MBT"). Plaintiff's "fiduciary exception" argument is startlingly broad and, if adopted, would effectively eliminate the attorney client privilege for the independent trustees of all of the many thousands of mutual funds organized as a business trust—a very common form of business organization in the industry. Under Plaintiff's view, all of the millions of mutual fund investors in the country are entitled to heretofore confidential, privileged communications simply by demanding them. There is no support in precedent, statute or logic for this extraordinary demand. No court in this District, this Circuit or elsewhere, has ever recognized a "fiduciary exception" in the context of (a) the mutual fund industry, (b) communications between non-party independent trustees and their independent counsel, or (c) the hundreds of Section 36(b) lawsuits filed in the 45 year history of Section 36(b).

Given the breadth of Plaintiff's argument, and the absence of supporting precedent, the Motion is notable for its lack of rigorous analysis of the "fiduciary exception" to the privilege and for its failure to discuss any of the broader implications of applying that idea to mutual fund trustees. Within this Circuit, the "fiduciary exception" has only been recognized in contexts much different from mutual funds organized as a business trust, such as claims against ERISA trustee defendants. Equally important, the Supreme Court has held that this narrow exception to traditional privilege law does <u>not</u> apply simply because a relationship is labeled a "trust." Further, Plaintiff, who purports to pursue this lawsuit "for the use and benefit of the PIMCO



Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Total Return Fund" and its shareholders, fully ignores the industry-destabilizing fallout—and the ensuing harm to himself and millions of mutual fund investors—that would result from revoking the protection of the attorney-client privilege from the thousands of independent trustees who have relied upon it to carry out their Congressionally mandated-role as "independent watchdogs," for the benefit of mutual fund shareholders. The Motion should be denied.

**BACKGROUND**

## I. THE INDEPENDENT TRUSTEES AND THEIR INDEPENDENT COUNSEL

As Plaintiff recognizes, the Independent Trustees serve an important role as the "watchdogs" of PIMCO Funds, representing shareholder interests consistent with the complex statutory requirements of the Investment Company Act of 1940 ("ICA") and regulations implemented by the SEC. *See* Mot. (Dkt. No. 102) at 1; Declaration of Megan C. Johnson ("Johnson Decl.") ¶8.[1] Among other defined responsibilities, the Independent Trustees must annually review and approve the agreement between the PIMCO Funds, including the Total Return Fund, and their investment adviser, PIMCO. Johnson Decl. ¶8; 15 U.S.C. §80a-15(c). They undertake that important task with the assistance and advice of their independent counsel, Dechert LLP ("Dechert"). Johnson Decl. ¶6. Dechert has represented the Independent Trustees as their independent counsel since [redacted] and has represented the PIMCO Funds since [redacted]. *Id.*

The SEC has recognized that the engagement of independent counsel provides crucial support to the Independent Trustees in navigating the complex statutory and regulatory scheme applicable to mutual funds, especially with respect to transactions between the funds and their investment adviser and its affiliates—such as the renewal of the Advisory Agreement. Final Rule: Inv. Co. Governance, SEC Release No. IC-26520, File No. S7-03-04 (July 27, 2004), 2004 WL 1672374 at *9 n.68; Final Rule: Role of Indep. Dirs. of Inv. Cos., SEC Release Nos. 33-7932, 34-43786, IC-24816, File No. S7-23-99 (Jan. 2, 2001), 2001 WL 6738 at *6 n.36; Johnson Decl. ¶11. SEC rules also mandate that the Independent Trustees annually determine that any

[1] Plaintiff's Motion opens with purported factual "background" that has little to do with whether Plaintiff has established an exception to the attorney-client privilege. The Independent Trustees will not respond to such statements except to correct those that relate to the application of the attorney-client privilege. *See* Johnson Decl. ¶13.



Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

legal work their independent counsel performs for the investment adviser or its affiliates is sufficiently limited that it is unlikely to adversely affect counsel's professional judgment in representing the Independent Trustees. 17 C.F.R. §270.0-1(a)(6)(i)(A); Johnson Decl. ¶9. Consistent with that rule, the Independent Trustees annually assess Dechert's independence. Johnson Decl. ¶12. As part of that process, Dechert provides a memorandum to the entire Board containing material information to assist in the Independent Trustees' deliberations. *Id.* ¶12 & Ex. 1. [redacted][2] *Id.* ¶13 & Ex. 1.

In the role of independent counsel, Dechert provides legal assistance and advice regarding the Independent Trustees' duties and responsibilities to the PIMCO Funds under federal and state law on a variety of topics critical to their function as Independent Trustees. Johnson Decl. ¶¶14-16. [redacted] *Id.* ¶¶17-20.

## II. PLAINTIFF'S SUBPOENAS TO THE INDEPENDENT TRUSTEES

Plaintiff has sued PIMCO and PIMCO Investments for alleged violations of Section 36(b) of the ICA, 15 U.S.C. §80a-35(b), based on the fees they charged to the PIMCO Total Return Fund. *See, e.g.*, Compl. (Dkt. No. 1) ¶1. The Complaint alleges that the PIMCO Funds Board is composed of a "majority of … 'disinterested' [trustees]" who "serve as 'watchdogs,'" to "oversee the fees charged with any eye solely to the benefit of the Fund and its shareholders." *Id.* ¶¶131, 132. However, the Independent Trustees are not defendants in this lawsuit, nor could they be, because Section 36(b) does not authorize a claim against them.

On November 30, 2015, Plaintiff served the Independent Trustees with non-party

---

[2] Plaintiff's Motion cites to [redacted] Mot. at 4. [redacted]

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

document subpoenas ("Subpoenas"). *See* Declaration of David A. Kotler ("Kotler Decl.") ¶4, Ex. 1. Plaintiff now claims that "[i]n response, the Independent Trustees … improperly assert[ed] that [certain documents] are protected by the attorney-client privilege," Mot. at 2, but the Subpoenas did not assert any "fiduciary exception" or otherwise request production of privileged communications; instead, each Subpoena specifically recognized the Independent Trustees' right to "withhold [] information or documents based upon a claim of privilege" and "claim privilege or protection as to part of a document." *E.g.*, Kotler Decl., Ex. 1.a at Sched. A, Instrs. 2 & 3. To date, the Independent Trustees have produced over 2,000 pages of responsive, non-privileged documents and have provided detailed privilege and redaction logs. *Id.* ¶¶11-14.

In response to the Subpoenas, the Independent Trustees completed a careful and diligent review of their communications for privilege. The Independent Trustees did not assert privilege over (i) communications between Dechert and the entire Board of Trustees (which includes two interested trustees), and (ii) communications between Dechert and the Independent Trustees that did not pertain to the provision of legal advice. However, communications between Dechert and the Independent Trustees related to the provision of legal advice, or communications among Independent Trustees regarding legal advice requested or received from Dechert, were appropriately withheld or redacted. As properly disclosed in the Independent Trustees' privilege and redaction logs, these included privileged communications related to the Independent Trustees' review and approval of the Agreements; preparation for or information received in connection with Board or Committee meetings; board governance matters, including the retirement of two Independent Trustees and the consideration, selection, and integration of four new Independent Trustees; and the departures of William H. Gross and Mohamed El-Erian from PIMCO. *See* Lin Decl. Exs. 2 & 3.

[REDACTED] Johnson Decl. ¶24.

**ARGUMENT**

Plaintiff contends that the Independent Trustees are required to disclose all privileged



Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

communications between the Independent Trustees and their independent counsel pursuant to a purported "fiduciary exception" that cannot be reconciled with the statutory and regulatory scheme governing mutual funds. No court has ever applied the "fiduciary exception" to mutual fund trustees and the Court should reject Plaintiff's invitation to be the first to do so. The Motion should be denied.

## I. THE COMMUNICATIONS AT ISSUE INDISPUTABLY ARE PRIVILEGED

Plaintiff concedes that "there is no dispute that the information withheld and redacted . . . concerns advice sought or provided to the Trustees." Mot. at 8. In fact, the requested relief is specifically predicated on the fact that the Independent Trustees' privilege and redaction logs establish the withheld and redacted documents are "confidential disclosures between attorney[] and client[] made for the purpose of giving and receiving legal advice." *Chandola v. Seattle Housing Auth.*, 2014 WL 4685351, at *2 (W.D. Wash. Sept. 19, 2014); *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009); Mot. at 2 ("The descriptions of the challenged documents reveal that all of the contested documents purportedly contain advice or requests for advice from Dechert . . . ."). Because Plaintiff does not dispute that the communications at issue are privileged (subject to their claimed application of the "fiduciary exception"), and because the Independent Trustees have not waived the privilege in any respect, the Independent Trustees need not present further evidence re-confirming that the privilege applies.[3]

## II. THE INDEPENDENT TRUSTEES' PRIVILEGED COMMUNICATIONS SHOULD REMAIN PROTECTED FROM DISCLOSURE

### A. Application Of The "Fiduciary Exception" Against the Independent Trustees Is Wholly Incompatible With The Legal Framework Governing Mutual Funds

Plaintiff argues that the non-party Independent Trustees lose all protection of the attorney-client privilege simply because PIMCO Funds is organized as a trust and, thus, its independent directors are "trustees." *See* Mot. at 6. As discussed below in Point II.B, the two cases Plaintiff cites do not support, let alone compel, that remarkable conclusion. To appreciate the illogic of the Motion, however, it bears emphasis that Plaintiff is asking this Court to

[3] The Independent Trustees nonetheless have satisfied their burden to establish the privilege by producing a privilege log that "enable[s] other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii); *see In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992).



Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

recognize a blanket privilege exception that is antithetical to the statutory and regulatory scheme protecting the interests of millions of mutual fund shareholders.[4]

The ICA provides that investment companies must be governed by a board of trustees, at least 40% of whom must be independent. 15 U.S.C. §§80a-2, 80a-10. As the Supreme Court observed, "the structure and purpose of [the ICA] indicate that Congress entrusted to the independent directors . . . the primary responsibility for looking after the interests of the funds' shareholders." *Burks v. Lasker*, 441 U.S. 471, 484-85 (1979). Most importantly, the ICA requires that the trustees negotiate and approve the fees paid to the "investment advisor [ ] or principal underwriter" on an annual basis, and charges the board with the crucial responsibility of promoting the shareholders' best interests in this process. *See* 15 U.S.C. §80a-15(c). For this reason, the Supreme Court has further recognized that independent trustees serve as the "independent watchdogs" with respect to the relationship between the fund's investment adviser and its shareholders. *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 348 (2010).

To carry out this "independent watchdog" role, among many other things, independent trustees work continuously throughout the year to monitor and assess the funds' advisor and distributor. Mutual funds, especially those as successful as the Total Return Fund, can be quite large and their operation very complex (*e.g.*, regulatory and internal compliance requirements, layered statutory and regulatory obligations). Hence, a critical aspect of the Independent Trustees' "watchdog" role is the advice and assistance of independent legal counsel. Indeed, the SEC has expressly encouraged such reliance, *see* Final Rule: Inv. Co. Governance, SEC Release No. IC-26520, File No. S7-03-04 (July 27, 2004), 2004 WL 1672374 at *9 n.68 ("One of the most useful advisers independent directors should consider engaging is their own counsel."), and specifically singled out the "independent directors' access to independent counsel [as] of key

[4] Plaintiff admits its sole focus on this Motion is proving its claims (*e.g.*, Mot. at 9), which are not against the Independent Trustees. However, whether the documents are "critical" to the litigation is not dispositive of whether the privilege is honored. *See Swidler & Berlin v. United States*, 524 U.S. 399, 409 (1998) (rejecting "balancing test" that would permit disclosure of privileged information that was "of substantial importance" because "a client may not know at the time he discloses information to his attorney whether it will later be relevant to a civil or criminal matter, let alone whether it will be of substantial importance" and such a test would "introduce[] substantial uncertainty into the privilege's application").



Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

importance when directors address questions of appropriateness and legality . . . of proposed transactions between the fund and its . . . adviser . . . ." Final Rule: Role of Indep. Dirs. of Inv. Cos., SEC Release Nos. 33-7932, 34-43786, IC-24816, File No. S7-23-99 (Jan. 2, 2001), 2001 WL 6738 at *6 n.36. Courts assessing Section 36(b) claims have therefore consistently recognized that "'[a]n important element of the independent director's informed state is the advice they received from their independent counsel.'" *In re Am. Mut. Funds Fee Litig.*, 2009 WL 5215755, at *54 (C.D. Cal. Dec. 28, 2009) (citations omitted).[5]

A necessary corollary of the SEC's and the courts' unambiguous endorsement of independent trustees' reliance on the legal advice of independent counsel is the recognition that communications with that counsel for the purposes of requesting and receiving such advice must be protected from disclosure by "'the most sacred of all legally recognized privileges'"—the attorney-client privilege. *United States v. Mett*, 178 F.3d 1058, 1062 (9th Cir. 1999) (citations omitted). The privilege is essential for independent trustees to freely communicate questions regarding their review of the advisory agreement and other key fund governance issues, and for counsel to provide candid and thorough advice. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (recognizing that the "purpose" of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice"). Thus, the privilege is essential to promoting shareholders' interest in a fully informed, conscientious board and a robust process for reviewing the advisory agreement. Or, to borrow from the Motion, the privilege undoubtedly helps the Independent Trustees carry out their "duty to ensure that their actions serve the best interests of the Fund's shareholders." Mot. at 1.

Conversely, without the protection of the privilege, independent trustees might forsake legal advice or otherwise stifle their conversations with counsel. *See Hunt v. Blackburn*, 128

[5] *Accord Gartenberg v. Merrill Lynch Asset Mgmt, Inc.*, 694 F.2d 923, 927 (2d Cir. 1982) ("The trustees, who were represented by capable independent counsel, were found to be competent, independent and conscientious in the performance of their duties."); Op. at 53, 55, *Sivolella v. AXA Equitable Life Ins. Co.*, No. 11-cv-4194 (D.N.J. Aug. 25, 2016) (recognizing the "role as the Board's independent counsel" and finding the Board was "careful and conscientious in performing its duties"); *Schuyt v. Rowe Price Prime Reserve Fund, Inc.*, 663 F. Supp. 962, 982 (S.D.N.Y. 1987) ("Another important resource was . . . the director's separate and independent legal counsel.").



Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

U.S. 464, 470 (1888) (recognizing that legal advice "can only be safely and readily availed of when free from the consequences or the apprehension of disclosure"). Accordingly, if the Court accepts Plaintiff's invitation to eviscerate the privileged relationship between independent trustees and their independent counsel, it will puncture Congress's and the SEC's reliance on well-informed, independent trustees to protect shareholders. *See Mett*, 178 F.3d at 1065 ("[A]n uncertain attorney-client privilege will likely result in [] trustees shying away from legal advice regarding the performance of their duties[, and that] outcome ultimately hurts beneficiaries [who] should prefer well-counseled trustees who clearly understand their duties."). In other words, the privilege "exception" Plaintiff would have this Court announce under the pretense of shareholder interest would actually destabilize the mutual fund industry to the detriment of all shareholders.

**B. The "Fiduciary Exception" Recognized In ERISA Or Common-Law Trust Disputes Does Not Eliminate the Privilege Between Mutual Fund Independent Trustees And Their Independent Counsel**

No court has ever allowed a plaintiff asserting Section 36(b) claims to view privileged communications between independent trustees to a mutual fund and their independent counsel on the basis of a "fiduciary exception," no matter whether the fund has been organized as a trust, a corporation, or other business entity.[6] Plaintiff nonetheless asserts that the "fiduciary exception" recognized in *United States v. Mett*, 178 F.3d 1058 (9th Cir. 1999) and *United States v. Jicarilla*, 564 U.S. 162 (2011) applies to the Independent Trustees' privileged communications in connection with their service to PIMCO Funds because PIMCO Funds is organized as a trust. *See* Mot. at 6. Nothing in these decisions establishes a blanket exception allowing anyone with "beneficiary" status access to otherwise privileged communications of a "trustee."

To the contrary, the Supreme Court explicitly ruled out that notion in *Jicarilla* when it rejected applying a "fiduciary exception" in the context of the federal government's relationship with Native Americans even "[t]hough the relevant statute denominates the relationship . . . a

[6] Indeed, that the fees for the Independent Trustees' independent counsel are paid from trust assets (*see* Mot. at 6)—which is almost universally true in the mutual fund industry—has never been found a basis to warrant the application of the "fiduciary exception" to mutual fund trustees.



Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

'trust.'"[7] 564 U.S. at 173-174. The Court held that since "that trust is defined and governed by statutes rather than the common law," and "its carefully delimited trust responsibilities" under that statute lack "[t]he two features justifying the fiduciary exception—the beneficiary's status as the 'real client' and the trustee's common-law duty to disclose information about the trust"—the exception did not apply. *Id.* at 173-179. Far from supporting Plaintiff's expansive interpretation of the "fiduciary exception," *Jicarilla* thus underscores that the vitality of the attorney-client privilege does not turn merely on whether an entity is organized as a "trust."

**1. Massachusetts Business Trusts, Such As PIMCO Funds, Are Critically Different From ERISA Trusts**

In *Mett,* the Ninth Circuit recognized a narrow fiduciary exception "in the ERISA context" where "'an employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration." 178 F.3d at 1062-63. Nothing in that case, or any other, indicates that ERISA trusts, administrators, and beneficiaries are sufficiently analogous to mutual fund trusts, trustees, and shareholders to find "'the most sacred of all legally recognized privileges'" should be "disabled" in the mutual fund context. *Id.* at 1062.

And indeed they are not. Mutual funds organized as MBTs, like PIMCO Funds, are critically different from ERISA trusts. *Compare Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015) ("We have often noted that an ERISA fiduciary's duty is 'derived from the common law of trusts.'"), *with Richardson v. Clarke*, 372 Mass. 859, 861-62 (1977) ("Business trusts possess many of the attributes of corporations and for that reason cannot be governed solely by the rules which have evolved for traditional trusts."). Plaintiff nevertheless would have this Court find that the label "trust" has talismanic effect, such that PIMCO Funds is directly analogous to an ERISA trust. Not so. PIMCO Funds holds hundreds of billions of dollars in assets, *see* Compl. ¶33, gathered from the voluntary contributions of millions of shareholders who can (and do)

---

[7] Plaintiff argues against a strawman in claiming that the Independent Trustees "wrongfully rely on *Jicarilla* as support for their claim that mutual fund trustees are exempt from the application of the fiduciary exception." Mot. at 7. The Independent Trustees' pre-motion letter does not "rely" on *Jicarilla*, but only explains why Plaintiff was wrong to rely on that case in its pre-Motion letter to "support Plaintiff's expansive interpretation of the 'fiduciary exception.'" Lin Decl. Ex. 5, at 6.



Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

purchase and sell fund shares with regularity, and is a member of the heavily-regulated and heavily-scrutinized mutual fund industry. PIMCO Funds thus bears scant resemblance to an ERISA trust—which typically contains assets related to an employer retirement plan for the benefit of a fixed set of beneficiaries (employees) who cannot transfer their interest.[8] Equally important, the role of the Independent Trustees—fulfilling a governance function as "independent watchdogs" to the business—bears no relationship to an ERISA fiduciary administering the plan for employees.

**2. Massachusetts Business Trusts Are Also Critically Distinguishable From Common-Law Trusts**

A MBT such as PIMCO Funds also differs in a number of critical ways from a traditional common law trust, including:

- A MBT differs from a private trust "in the manner in which the trust relationship is created; investors in a business trust enter into a voluntary, consensual, and contractual relationship, whereas the beneficiaries of a traditional private trust take their interests by gift from the donor or settlor." Chermside, *Modern Status of the Massachusetts or Business Trust,* 88 A.L.R.3d 704, 720 (1978).
- Beneficial owners of MBT shares contribute their own funds to purchase shares, unlike common-law trusts in which a third party grantor or testator contributes assets, as in a testamentary or *inter vivos* trust. *See Hecht v. Malley*, 265 U.S. 144, 146 (1924) ("The 'Massachusetts Trust' . . . consist[s] essentially of an arrangement whereby property is conveyed to trustees, in accordance with the terms of an instrument of trust, to be held and managed for the benefit of such persons as may from time to time be the holders of transferable certificates . . . .").
- MBTs have transferable shares, whereas common-law trusts typically do not. Mass. Gen. Laws ch. 182, §1; *see Hecht*, 265 U.S. at 146 (noting that shareholders receive "transferable certificates . . . showing the shares into which the beneficial interest in the property is divided," which "resemble certificates for shares of stock in a corporation and are issued and transferred in like manner").
- MBTs can convert into corporations and vice versa; and may merge with corporations. Mass. Gen. Laws ch. 156D, §§ 1.40, 9.50, 11.02. Common-law trusts cannot.

---

[8] *Compare State St. Trust Co. v. Hall*, 311 Mass. 299, 302-303 (Mass. 1942) (recognizing that with a Massachusetts Business Trust "the transfer of beneficial interests … is readily and easily accomplished by the transfer of the shares"), *with Patterson v. Shumate*, 504 U.S. 753, 759 (1992) ("ERISA … clearly imposes a 'restriction on the transfer' of a . . . 'beneficial interest' in the trust.'"), *and* 29 U.S.C. §1056(d)(1) ("[E]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated.").



Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

### 3. The Rationale For Permitting The "Fiduciary Exception" In ERISA Or Common-Law Trusts Is Entirely Inapplicable To Independent Trustees Of Mutual Funds

These fundamental differences are crucial, because as *Jicarilla* makes clear, the applicability of the fiduciary exception depends upon the legal sources (common law, state, federal) that structure the fiduciary obligations of the trustees and the rights of the trust's beneficiaries. 564 U.S. at 173. Indeed, *Mett* recognized that the fiduciary exception "derives from" (1) "an ERISA trustee's duty to disclose to plan beneficiaries all information regarding plan administration," and (2) "the role of the trustee" such that "'as a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client in the sense that he is personally being served.'" 178 F.3d at 1063. Neither rationale applies here.

As to disclosure, the rights and duties of the Independent Trustees and fund shareholders are governed by federal and Massachusetts law. The applicable law and regulations require that specified non-privileged information be disclosed to mutual fund shareholders (e.g., fund performance, certain fees charged, the fund's investment objective, certain investment risks),[9] but this cabined duty does not provide a blanket obligation to disclose "all information," which would eliminate the attorney-client privilege altogether. Simply put, there is no law, regulation or duty placed on the Independent Trustees to disclose the legal advice upon which they rely in fulfilling their legal obligations as trustees. *See Jicarilla*, 564 U.S. at 185 (finding no "general common-law duty to disclose all information related to the administration of [the] trusts").[10]

Additionally, PIMCO Funds' shareholders cannot be considered the "real clients" of Dechert. As a matter of common sense, they are not the persons "for whom [the] advice is intended" when Dechert advises the Independent Trustees on their own legally-mandated duties as trustees. *Id.* at 179. Likewise, the Independent Trustees are not mere agents of fund shareholders, such that the Court could find that Dechert abstractly represents the shareholders. It would be wholly inappropriate to consider Plaintiff the "real client" of the Independent Trustees' independent counsel where, as here, the Independent Trustees navigate multiple legal

[9] *E.g.*, 15 U.S.C. §80a-29(e) (reports to stockholders); 17 C.F.R. §270.30b1-5 (reports filed with the SEC).

[10] Massachusetts law also has not recognized the "fiduciary exception" with respect to a mutual fund organized as a MBT.



Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

and regulatory obligations that they seek to manage in the interests of a fluid and always large number of voluntary shareholders.[11]

Finally, in the limited circumstances in which the fiduciary exception has been applied, it served the purpose of preventing <u>defendants</u> from shielding breaches of their fiduciary duties from discovery. *See, e.g.*, *United States v. Evans*, 796 F.2d 264, 266 (9th Cir. 1986). The Independent Trustees are not, and cannot be, defendants in this lawsuit. We are aware of no court in this Circuit applying the fiduciary exception to invade a privilege belonging to a third party. *See Mett*, 178 F.3d at 1065 ("[W]here attorney-client privilege is concerned, hard cases should be resolved in favor of the privilege, not in favor of disclosure.").[12]

**CONCLUSION**

The protection of the attorney-client privilege encourages independent trustees to request and receive legal advice on important topics consistent with the exercise of their statutory and regulatory responsibilities as trustees, without requiring disclosure to the adviser, to shareholders, or to the public. In entering into the communications for which Plaintiff now seeks full disclosure, [redacted] The ruling that Plaintiff seeks—that there is effectively no attorney-client privilege applicable to communications between independent trustees of a mutual fund and their independent counsel with respect to legal advice received in serving as independent trustees and exercising their "independent watchdog" function—would not only run directly contrary to long-settled and accepted industry standards and practices, but would have a very harmful effect on the independent trustees to thousands of mutual funds, to the detriment of Plaintiff and millions of other mutual fund shareholders.

For the foregoing reasons, Plaintiff's Motion to Compel should be denied.

---

[11] Identifying the mutual fund's shareholders as the real "client" of independent counsel also would raise ethical issues given that the myriad shareholders of a typical fund will never have met with that counsel, never acted to retain such counsel, and may have interests that conflict with that counsel's other clients or fund shareholders.

[12] Although the Ninth Circuit has not expressly recognized the "good cause" pre-requisite to applying the "fiduciary exception" recognized in *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970), *see Weil v. Inv./Indicators Research & Mgmt.*, 647 F.2d 18 (9th Cir. 1981), Plaintiff does not and cannot demonstrate good cause here.



Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

DATED: October 3, 2016.

By: /s/ Brendan T. Mangan

Brendan T. Mangan, WSBA No. 17231
Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone: (206) 622-3150
Facsimile: (206) 757-7700
Email: brendanmangan@dwt.com

Matthew L. Larrabee (Admitted *Pro Hac Vice)*
David A. Kotler (Admitted *Pro Hac Vice)*
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
Email: david.kotler@dechert.com

Attorneys for Non-Party Independent Trustees of PIMCO Funds

**PROOF OF SERVICE**

I hereby certify that on 3rd day of October, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record registered on the CM/ECF system. All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure:

DATED this 3rd day of October, 2016.

*/s/Brendan T. Mangan*
Brendan T. Mangan, WSBA No. 17231



Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax